[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 09-11520

_____

Agency No. A022-791-016

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
JULY 27, 2010
JOHN LEY
CLERK

ROBERTO GARCES,

Petitioner,

versus

U.S. ATTORNEY GENERAL,

Respondent.

_____

Petition for Review of a Decision of the
Board of Immigration Appeals

_____

(July 27, 2010)

Before CARNES, ANDERSON, and STAHL,[*] Circuit Judges.

CARNES, Circuit Judge:

---

[*] Honorable Norman H. Stahl, United States Circuit Judge for the First Circuit, sitting by designation.

Roberto Garces has petitioned us for review of the Board of Immigration Appeals' order dismissing his appeal from an immigration judge's order finding him removable under section 212(a)(2)(C) of the Immigration and Nationality Act, 8 U.S.C. § 1182(a)(2)(C), as an alien whom the Attorney General "knows or has reason to believe is or has been an illicit trafficker in any controlled substance." Unlike other grounds for inadmissibility that are triggered by criminal convictions, the "reason to believe" provision allows removal based on criminal conduct even if there was no conviction. At issue in this case is whether the combination of a guilty plea leading to a conviction that was later vacated and some hearsay statements in police reports provides enough reason to believe that Garces trafficked in a controlled substance. Our conclusion is that it does not, at least not in the circumstances of this case.

## I.

Garces, a native and citizen of Cuba, was paroled into the United States in 1980. See generally INA § 212(d)(5)(A), 8 U.S.C. § 1182 (d)(5)(A). Three years later, on April 6, 1983, he was caught up in a drug bust at a Miami Beach hotel. That would eventually lead to a removal notice being filed against Garces in 2006, an immigration hearing in 2007, a BIA decision in 2009, and this review of that decision.

Two different accounts of what happened that April night in 1983 emerge from the record, one from arrest reports and the other from Garces' testimony at his 2007 immigration hearing.

The record contains four sworn "complaints/arrest affidavits," which we will call arrest reports, prepared by the Miami Beach police officers who arrested Garces and five other men as a result of an attempted drug transaction that night. According to those four arrest reports, undercover officers had arranged a cocaine buy at a hotel. Around 9:45 p.m. George Canevaro "arrived w[ith]" Kevin Sayers and Juan Castillo, and Garces then arrived and "made contact with" Canevaro at the hotel. After Castillo made a phone call, Canevaro came up to the room where the undercover "buyer" was waiting. Canevaro walked out on the balcony, signaled to someone downstairs, turned around, and handed the undercover officer baggies containing about four ounces of cocaine. He was arrested a few minutes later.

Meanwhile, other officers saw Garces and a man named "Joseph" (last name unknown) get into a late-model Isuzu and begin to leave the parking lot. When the officers identified themselves and ordered Garces to stop, he swerved the car "towards" one of the officers and "attempted to run him down." After the officer jumped out of the way, the car hit a light pole and a tree and came to a stop. Joseph jumped out of the passenger side and was subdued after a struggle. He and

3

Garces were placed under arrest and advised of their rights. None of the arrest reports mention any shots being fired.

Garces, testifying at his immigration hearing twenty-four years after the fact, told a different story. He was at home around 9:00 p.m. when Canevaro, his neighbor from down the block, stopped by and invited him to a birthday party. Garces had been acquainted with Canevaro for about a year, and the two men would chat when they washed their cars on Saturdays. He insisted that he had no idea that Canevaro, who had a job and a family, was involved in anything illegal. Garces did not know the person whose birthday was being celebrated, but he drove Canevaro to the party at a hotel in Miami Beach. When they arrived there at around 9:45 p.m., Garces pulled up in front of the lobby and Canevaro got out of the car to meet someone at the door. Garces then got out and asked Canevaro where he should park. Canevaro told a man named Joseph, whom Garces had not previously met, to show him where to take the car.

As Garces, with Joseph in the car, was driving slowly through the dark parking lot looking for a space, several men approached, brandishing guns. When one of those men jumped in front of the car, Garces swerved to avoid hitting him, causing the car to crash. Joseph then jumped out of the car and began struggling

4

with the men.  Garces thought it was a robbery.  He heard gunshots.[1]  When he got out of the car, someone grabbed him from behind, put a gun to his head, and threw him to the ground.  Only after they put him in handcuffs did he realize that the men were plainclothes police officers.  Before that, Garces had not heard the men identify themselves as police.  He testified he did not have any drugs on his person or in his car, and he had no idea that Canevaro had drugs and was planning to sell them.

Garces was initially charged with trafficking in cocaine, in violation of Fla. Stat. § 893.135; aggravated assault, in violation of Fla. Stat. § 784.021; and willfully fleeing, in violation of Fla. Stat. § 316.1935.  On April 16, 1984, one year after his arrest, Garces pleaded guilty in Dade County Circuit Court to the trafficking[2] and aggravated assault charges.  On May 30, 1984, he was sentenced to three years' probation on the drug charge; he received deferred adjudication and a suspended sentence on the assault charge.

Because the record in this case does not contain any transcript or minutes of the long-ago plea proceedings, we do not know what statements Garces made

_____

[1] Garces' counsel does not contend that any shots were actually fired that night but instead suggests that his client was "confused" after wrecking the car and might have mistaken some other noise for gunfire.

[2] The few state court documents that are in the record are inconsistent as to whether the charge to which Garces ultimately pleaded was trafficking in cocaine, Fla. Stat. § 893.135, or sale of an opium derivative, Fla. Stat. § 893.13.  For purposes of federal immigration law and this appeal, it makes no difference.

during those proceedings, or whether he was under oath at the time; we do not know what the judge said to him; and we do not know what evidence the prosecution had against him or whether the prosecutor recited it. When asked at the immigration hearing nearly a quarter of a century later why he had pleaded guilty if, as he now insists, he did not commit any crime, Garces testified that his attorney advised him to do so. He was told that if he took the plea deal he would get probation, which the lawyer called "nothing," but if he went to trial and lost, he could have faced up to 15 years in prison. Garces added that he also did not have the money to pay that lawyer to represent him through trial. The lawyer misadvised him that a guilty plea would not affect his immigration status.

## II.

Garces eventually found out that, as far as federal immigration law is concerned, a felony drug conviction is very far from "nothing." See, e.g., 8 U.S.C. § 1182(a)(2)(A)(i)(II) (alien convicted of, or who admits having committed, a controlled substance offense is inadmissible to this country). He learned that lesson when he first applied for permanent resident status and saw his application denied.[3] That prompted Garces to return in August of 2000 to the same state court that had convicted him sixteen years earlier and file a motion under Fla. R. Crim. P. 3.850 to vacate and set aside his guilty plea. His motion asserted that the plea

_____

[3] The record does not contain any details about this first application.

6

was involuntary because the court had failed to advise him of potential immigration consequences as required by the Florida Rules of Criminal Procedure. See Fla. R. Crim. P. 3.172(c)(8) ("[T]he trial judge . . . shall determine that [the defendant] understands . . . that if he or she pleads guilty or nolo contendere, if he or she is not a United States citizen, the plea may subject him or her to deportation . . . ."). The Florida court apparently agreed, because on August 11, 2000, it vacated Garces' guilty plea and resulting convictions. The same court order also noted that the state had decided to nol pros the original charges, not a surprising decision in light of the length of time that had elapsed.

At some point after his convictions were vacated, though the record does not indicate exactly when, Garces submitted a second application to the United States Citizenship and Immigration Services seeking adjustment to permanent resident status under the Cuban Adjustment Act, Pub. L. No. 89-732, 80 Stat. 1161 (Nov. 2, 1966) (reproduced as a historical note to 8 U.S.C. § 1255). The USCIS denied Garces' second application on August 11, 2006, informing him that he was still inadmissible to the United States because there was reason to believe he had engaged in drug trafficking. See 8 U.S.C. § 1182(a)(2)(C).

On September 28, 2006, the Department of Homeland Security revoked Garces' parole into this country and initiated removal proceedings. The Notice to Appear charged two grounds for removal: (1) that he was an immigrant not in

7

possession of a valid visa or other entry document, INA § 212(a)(7)(A)(i)(I), 8 U.S.C. § 1182(a)(7)(A)(i)(I); and (2) that there was reason to believe he had engaged in drug trafficking, INA § 212(a)(2)(C), 8 U.S.C. § 1182(a)(2)(C)(i). Specifically, it alleged that he "sold 4½ ounces, more or less, of Cocaine to an undercover Police Officer" in 1983.

On December 6, 2006, Garces filed a motion in the Immigration Court to renew his application under the Cuban Adjustment Act. He denied any involvement in the cocaine sale, telling the court he had only pleaded guilty because he could not afford to pay his lawyer through a trial and he believed that the probationary sentence would not affect his immigration status. Garces argued that there was insufficient evidence to establish that he "knowingly and consciously participated" in the cocaine transaction.

At the initial hearing before the immigration judge on December 12, 2006, Garces conceded removability on the documents charge but denied that he was removable on the drug trafficking charge. Pointing out that his trafficking conviction had been vacated, he insisted he had nothing to do with the 1983 drug transaction that had led to that conviction. The government acknowledged that the conviction itself could no longer be considered, but indicated that it would rely on the underlying facts of the arrest as reason to believe Garces had engaged in drug trafficking. The IJ did not rule on Garces' motion to renew his Cuban Adjustment

8

Act application. The IJ did say, however, that if convinced there was no reason to believe that Garces had trafficked drugs, he would find him to be not inadmissible and terminate the removal proceedings, which would enable Garces to reapply for an adjustment of status.

On April 3, 2007, the IJ held an evidentiary hearing on whether there was reason to believe that Garces had trafficked drugs. The 1983 arrest reports that referred to Garces were admitted without objection.[4] Garces testified to his version of what had happened on the evening of April 6, 1983. See supra 4–5. On cross-examination, the government questioned him about discrepancies between his testimony and what was reported in the officers' affidavits. See supra 3–4.

Six days later, on April 9, the IJ issued a written order sustaining Garces' removability on the "reason to believe" charge. He found that Garces was "not a particularly credible witness," and to support that finding gave three reasons. First, Garces testified that he had driven Canevaro to the hotel, while the arrest report said that he had "made contact with" Canevaro there. When asked about that discrepancy, Garces had no explanation. Second, the IJ found that a last minute invitation to a birthday party for someone Garces did not even know was "not a

---

[4] Garces is mentioned by name in only two of the reports, his own and that for "Joseph." Neither side attempted to track down the arresting officers. Even if they could have been found, it is unlikely that after so many years they would have remembered any independent detail about what seems to have been a fairly routine drug bust.

9

plausible or reasonable explanation" for his presence at the hotel. Third, the IJ thought Garces' story that the plainclothes officers had approached his car without identifying themselves and at some point fired their weapons "hardly seems credible or within standard police operating procedure," especially since the police reports did not mention any gunfire. Garces did not offer "any meaningful or credible testimony" to dispute the account of his conduct in the arrest reports. The IJ concluded by finding that Garces "was a conscious participant in a drug transaction" and was therefore removable as a drug trafficker.

Garces moved for reconsideration, arguing that the IJ erred by giving too much weight to the arrest affidavits, which have limited probative value under BIA precedent and which would be inadmissible as hearsay in a Florida court. See In re Arreguin de Rodriguez, 21 I. & N. Dec. 38, 42 (BIA 1995); Fla. Stat. § 90.803(8). In any case, he argued, the affidavits did not allege he was caught with any drugs, and any differences between the reports and his own version of events were insignificant. The IJ denied Garces' motion for reconsideration and later entered a final order finding him removable on both the documents charge and the drug trafficking charge. Although the documents charge would not have prevented Garces from obtaining lawful residency under the Cuban Adjustment Act, the finding of reason to believe that he had trafficked in drugs would and did.

10

Garces filed a timely appeal with the BIA, repeating the same arguments he had made to the IJ in his motion for reconsideration.  On September 18, 2008, the BIA issued a final order affirming the IJ's finding of inadmissibility on the documents charge.  The BIA concluded that it did not need to address Garces' challenge to the trafficking charge because he had conceded removability on the documents charge, and he had not identified any form of relief from removal for which he would be eligible.

Garces promptly filed a motion for reconsideration, arguing that the BIA erred as a matter of law in not addressing the trafficking charge.  He pointed out that he had requested relief from removal when he moved in the Immigration Court to reopen his application for adjustment of status under the Cuban Adjustment Act.  While the drug trafficking charge would prevent him from obtaining lawful residency under the CAA, the documents charge alone would not.  On October 20, 2008, with his motion for reconsideration still pending before the BIA, Garces filed a petition in this Court for review of the BIA's order.  Garces v. U.S. Att'y Gen., No. 08-15926.

The BIA granted Garces' motion for reconsideration, but dismissed his appeal.  In its March 9, 2009 order the BIA found no reversible error in the IJ's conclusion that Garces was removable on the "reason to believe" charge.  It explained:

11

The record evidence, including the police report and the "Motion to Vacate and Set Aside Guilty Plea" in which the respondent confirms that he pled guilty to possession with intent to sell cocaine, is admissible for the purpose of establishing his inadmissibility, and is reasonable, substantial, and probative evidence supporting the Immigration Judge's finding of inadmissibility under section 212(a)(2)(C) of the Act.

Garces filed with us a timely petition for review of the BIA's March 9 order, along with a motion to consolidate it with his earlier petition. Garces v. U.S. Att'y Gen., No. 09-11520. We granted the motion to consolidate. The government moved to dismiss both of the petitions for review for lack of jurisdiction. We dismissed the petition for review of the BIA's initial September 18, 2008 order as moot in light of the March 9, 2009 order. However, we denied the government's motion to dismiss the petition for review of the March 9, 2009 order, explaining that Garces "raises a colorable legal argument as to whether the [BIA] erred in considering his vacated conviction in holding that there was reason to believe that Garces had engaged in trafficking a controlled substance." After oral argument on March 19, 2010, we directed the parties to submit supplemental briefing on two issues: (1) the significance, if any, of the Supreme Court's decision in Kercheval v. United States, 274 U.S. 220, 47 S.Ct. 582 (1927), which held that a withdrawn guilty plea is inadmissible in subsequent criminal proceedings; and (2) whether Florida procedural rules in effect in 1984 would have required Garces to make a sworn factual admission of guilt when he entered his plea.

12

**III.**

Before reaching the merits, we must first determine whether we have jurisdiction. We lack jurisdiction to review a final order of removal against an alien who "is removable by reason of having committed a criminal offense covered in [8 U.S.C.] section 1182(a)(2)," such as drug trafficking. INA § 242(a)(2)(C), 8 U.S.C. § 1252(a)(2)(C). We do, however, have jurisdiction to determine underlying facts that establish our jurisdiction or lack of it—in this case, to determine whether Garces in fact "committed a criminal offense" and therefore "is removable." The upshot of all this is that the jurisdictional question merges into our consideration of the merits.[5] See Resendiz-Alcaraz v. U.S. Att'y Gen., 383 F.3d 1262, 1266–67 (11th Cir. 2004); Fernandez-Bernal v. U.S. Att'y Gen., 257 F.3d 1304, 1309–10 (11th Cir. 2001).

**IV.**

If Garces' state conviction still stood, there is no question that he would have been subject to removal. Under INA § 212(a)(2)(A)(i)(II), 8 U.S.C. §

---

[5] As part of the threshold jurisdictional inquiry, the government urges us to review the entire record de novo and make our own independent determination as to whether Garces engaged in drug trafficking before we decide whether the BIA had reason to believe that he did. Apparently, it makes this suggestion so that we will take into account the IJ's finding that Garces did not testify credibly, which we would not otherwise consider because the BIA did not expressly adopt it. See Al Najjar v. Ashcroft, 257 F.3d 1262, 1284 (11th Cir. 2001). It would make no difference if we did that, because the inconsistencies identified by the IJ in Garces' testimony are not significant enough to change our conclusion that the record fails to support a "reason to believe" determination.

13

1182(a)(2)(A)(i)(II), he would have been inadmissible as an alien convicted of violating a state law "relating to a controlled substance" for which the maximum possible penalty exceeded one year's imprisonment. Id. § 1182(a)(2)(A)(ii)(II); see Fla. Stat. §§ 893.135(1)(b)(1) and 775.082(3)(b) (first degree felony punishable by up to thirty years in prison). Whether Garces actually committed the crime would not have mattered, because the BIA "will not go behind a record of conviction to determine the guilt or innocence of an alien." In re Arreguin de Rodriguez, 21 I. & N. Dec. at 42.

Whether Garces committed that crime or, more specifically, whether there is reason to believe that he did, does matter because his conviction was vacated. In the eyes of the State of Florida that conviction is a legal nullity. Whether it is a nullity for purposes of 8 U.S.C. § 1182(a)(2) and other provisions of federal immigration law that refer to criminal convictions, depends on the reason it was vacated. A vacatur or expungement obtained under a rehabilitative statute, or granted simply in order to help the alien avoid "immigration hardships," has no effect for immigration law purposes. See In re Adamiak, 23 I. & N. Dec. 878, 879–80 (BIA 2006). By contrast, the vacatur of a conviction because of a constitutional, statutory, or procedural defect in the underlying criminal proceedings does have effect—there is no longer a "conviction" for immigration purposes. Id. We held in Alim v. Gonzales, 446 F.3d 1239 (11th Cir. 2006), that

14

the BIA's approach as outlined in <u>Adamiak</u> was a reasonable interpretation of the Immigration and Nationality Act and was therefore entitled to <u>Chevron</u> deference. <u>Id.</u> at 1249–50; <u>cf.</u> <u>Resendiz-Alcaraz v. U.S. Att'y Gen.</u>, 383 F.3d 1262, 1267–69 (11th Cir. 2004) (a state conviction expunged because defendant successfully completed probation was still a "conviction" under INA).

The petitioner in <u>Alim</u> faced removal under the "crime of moral turpitude" provision of 8 U.S.C. § 1227(a)(2)(A)(ii) because of a Florida conviction for domestic battery. <u>Alim</u>, 446 F.3d at 1242–43. He obtained a vacatur of his guilty plea and conviction on the same ground as did Garces: his plea was involuntary because the court failed to advise him of possible immigration consequences. <u>Id.</u> at 1243; <u>see</u> Fla. R. Crim. P. 3.172(c)(8). Because the state court vacated the conviction due to a defect in the underlying proceedings, Alim was no longer "convicted" for immigration purposes, and the same is true of Garces.[6] <u>See</u> <u>Alim</u>, 446 F.3d at 1250–51. It is not necessary that the defect be one that implicates a federal right, although this one probably does.[7] We give full faith and credit to the

---

[6] By contrast, a vacated state conviction remains effective for immigration purposes if it is not clear from the record that the vacatur was based on a defect in the underlying proceedings. <u>See</u> <u>Ali v. U.S. Att'y Gen.</u>, 443 F.3d 804, 810–11 & n.7 (11th Cir. 2006) (alien was removable based on vacated Georgia conviction for child molestation, where state court said only that it granted vacatur "for good cause shown and by consent of the parties" and did not explain further; alien claimed it was because he had not been warned of immigration consequences, but Georgia law at the time did not require such a warning).

[7] In <u>Padilla v. Kentucky</u>, 130 S.Ct. 1473 (2010), the Court held that an attorney's failure to warn a non-citizen defendant of possible immigration consequences of his plea can, assuming prejudice is shown, constitute ineffective assistance of counsel in violation of the Sixth

15

Florida court's determination that the judgment of conviction was flawed because Garces was deprived of a right he did have under Florida law. See Adamiak, 23 I. & N. Dec. at 881 (accepting vacatur based on violation of Ohio rule similar to Florida's); cf. In re Rodriguez-Ruiz, 22 I. & N. Dec. 1378, 1379–80 (BIA 2000) (giving full faith and credit to New York court's judgment vacating a conviction that had been entered by the courts of that state, and declining to analyze whether that court had correctly applied the law in doing so).

Unfortunately for Garces, the vacatur of his conviction did not end the matter. The matter lingers on because the charge on which he was found removable does not depend on a criminal conviction. Instead, it requires simply that there be "reason to believe" Garces engaged in drug trafficking. The relevant provision of the INA reads as follows:

> (C) CONTROLLED SUBSTANCE TRAFFICKERS- Any alien who the consular officer or the Attorney General knows or has reason to believe—
>
> (i) is or has been an illicit trafficker in any controlled substance or in any listed chemical (as defined in [21 U.S.C. § 802]), or is or has been a

---

Amendment. Id. at 1482–84. Padilla, who like Garces faced a state drug trafficking charge, received the same type of erroneous advice when his attorney told him he would "not have to worry" about his immigration status if he took a plea deal. Id. at 1478. Still, neither the Supreme Court nor this Court has specifically held that a defendant's ignorance of immigration consequences renders his guilty plea involuntary. See United States v. Campbell, 778 F.2d 764, 768 (11th Cir. 1985) (holding that because deportation is merely a collateral consequence of criminal conviction, there is no federal constitutional right to be warned of it); cf. Padilla, 130 S.Ct. at 1481–82 (recognizing disagreement among courts as to whether deportation is a direct or a collateral consequence of conviction, and declining to decide the question).

knowing aider, abettor, assister, conspirator, or colluder with others in the illicit trafficking in any such controlled or listed substance or chemical, or endeavored to do so . . . is inadmissible.

INA § 212(a)(2)(C), 8 U.S.C. § 1182(a)(2)(C).

A "reason to believe" determination can be made even if the alien was never convicted of any offense. See In re Favela, 16 I. & N. Dec. 753, 754–56 (BIA 1979) (alien excluded based on his admission that he attempted to smuggle marijuana, even though he was not convicted of a controlled substance offense); In re Rico, 16 I. & N. Dec. 181, 185–86 (BIA 1977) (alien excluded after being caught with truckload of marijuana, even though criminal charges were dropped); In re R-H-, 7 I. & N. Dec. 675, 678 (BIA 1958) (alien excluded based on his admission that he helped dealer deliver marijuana, even though he was never convicted of it). And the fact that a drug conviction was subsequently vacated, for whatever reason, does not bar immigration authorities from using the facts that led to the conviction as the basis for a "reason to believe" charge. See Castano v. INS, 956 F.2d 236, 238–39 (11th Cir. 1992) (upholding BIA's determination of removability based on facts underlying conviction for distributing cocaine, even though conviction was expunged under federal youthful-offender rehabilitation statute). To hold otherwise would lead to the absurd result that an alien who was convicted, and then obtained a vacatur, would be in a better position than one who was never convicted in the first place. Id. at 239. Given that the conviction is out

17

of the picture, the question is whether the evidence in the record shows that there is "reason to believe" that Garces was engaged in drug trafficking on that April night in Miami when he was arrested and charged with the crime.

Although Garces was paroled into the United States in 1980, he was never admitted as a legal resident. See INA § 212(d)(5)(A), 8 U.S.C. § 1182 (d)(5)(A) ("parole . . . shall not be regarded as an admission of the alien"). For that reason, in the removal proceeding the burden was on him to establish that he was "clearly and beyond doubt" entitled to admission, and that he was not inadmissible under any of the grounds enumerated in 8 U.S.C. § 1182(a). See 8 U.S.C. § 1229a(c)(2)(A).[8] According to the government, that means Garces had to prove clearly and beyond doubt that it would be "unreasonable" to believe he had engaged in drug trafficking. However, the burden of proof in the immigration hearing and the standard of review on appeal are not the same thing. See Adefemi v. Ashcroft, 386 F.3d 1022, 1027 & n.9 (11th Cir. 2004) (en banc) (explaining how burden of proof differs from standard of review in the context of immigration proceedings). Our task is to determine whether the BIA's decision is supported by reasonable, substantial and probative evidence. See Diallo v. U.S. Att'y Gen., 596

_____

[8] By contrast, if Garces had already obtained legal resident status, then the government would bear the burden of proving the trafficking charge in a removal proceeding by clear and convincing evidence. 8 U.S.C. § 1229a(c)(3)(A); see Woodby v. INS, 385 U.S. 276, 286, 87 S.Ct. 483, 488 (1966) (facts alleged as grounds for deportation of resident alien must be found by "clear, unequivocal, and convincing evidence").

18

F.3d 1329, 1332 (11th Cir. 2010) (per curiam). The fact that Garces had the burden before the IJ does not change our review of the BIA's decision. See Adefemi, 386 F.3d at 1027; see also Blanco v. Mukasey, 518 F.3d 714, 720 (9th Cir. 2008) (reviewing BIA's decision under substantial-evidence standard while noting that alien had burden of proof below); Singh v. Gonzalez, 413 F.3d 156,160–61 (1st Cir. 2005) (same).

Burdens of proof notwithstanding, a finding of inadmissibility must be based on something more than the alien's failure to prove a negative. We do not require every alien seeking admission to the United States to produce evidence proving clearly and beyond a doubt that he is not a drug trafficker, unless there is already some other evidence—some "reason to believe"—that he is one. The State Department's Foreign Affairs Manual explains what is needed to make such a determination:

> "Reason to believe" might be established by a conviction, an admission, a long record of arrests with an unexplained failure to prosecute by the local government, or several reliable and corroborative reports. The essence of the standard is that the consular officer must have more than a mere suspicion—there must exist a probability, supported by evidence, that the alien is or has been engaged in trafficking. . . .

U.S. Dep't of State, 9 Foreign Affairs Manual 40.23 Notes n.2(b) (emphasis added).

19

The Foreign Affairs Manual rule, which is addressed to the officers who make initial determinations on an alien's admissibility, is consistent with the standard of review that applies at later stages of appeal. The BIA itself requires that a finding of inadmissibility under the "reason to believe" provision be based on "reasonable, substantial, and probative evidence." Rico, 16 I. & N. Dec. at 185.[9] Likewise, we will affirm the BIA's decision if it is supported by "reasonable, substantial, and probative evidence on the record considered as a whole." Diallo, 596 F.3d at 1332. See also Alarcon-Serrano v. INS, 220 F.3d 1116, 1119 (9th Cir. 2000) ("The appropriate way of measuring whether the IJ and the BIA had 'reason to believe' that [petitioner] knew he was participating in drug trafficking is to determine whether substantial evidence supports such a conclusion. In this regard, the conclusion of the immigration judge must be affirmed if based on reasonable, substantial, and probative evidence.").

In this case, the BIA determined that "[t]he record evidence, including the police report and the 'Motion to Vacate and Set Aside Guilty Plea' in which the respondent confirms that he pled guilty to possession with intent to sell cocaine," constituted reasonable, substantial, and probative evidence supporting the IJ's

---

[9] The BIA has also suggested that where the ground asserted for exclusion is one that would permanently bar the alien from admission to the United States, "close scrutiny" of the factual basis for the charge is warranted. In re Healy and Goodchild, 17 I. & N. Dec. 22, 29 & n.7 (BIA 1979) (alien charged with willfully making false statement to obtain visa).

20

finding that Garces was inadmissible because there was reason to believe he had engaged in drug trafficking. We consider the guilty plea and the arrest reports in turn.

A.

Even though Garces' 1984 conviction itself no longer exists for immigration purposes, see Alim, 446 F.3d at 1250–51, the facts that led to it can still support a "reason to believe" determination if they are established by reasonable, substantial, and probative evidence. See Castano, 956 F.2d at 238–39. Of course, in any civil or criminal proceeding in federal court, evidence of a withdrawn guilty plea, or of any statements made in the course of plea proceedings or negotiations, would not be admissible. Fed. R. Evid. 410. Rule 410 codifies and expands the Supreme Court's holding in Kercheval v. United States, 274 U.S. 220, 47 S.Ct. 582 (1927), that a withdrawn guilty plea is not admissible in a later criminal trial for the same offense. Id. at 223–24, 47 S.Ct. at 583 ("When the plea was annulled it ceased to be evidence."); see Fed. R. Evid. 410 advisory committee's note. Though its language is sweeping, Kercheval's actual holding is limited to the context of a later criminal trial on the same offense. See id. For that reason, it has no direct application to immigration proceedings which, although their result may be dictated by the outcome of an earlier criminal case, are not a continuation of that case. Immigration proceedings are not criminal trials, and the "reasonable,

21

substantial, and probative evidence" needed to support a determination of removability is considerably less than the proof beyond a reasonable doubt that would be required for a criminal conviction. See Rico, 16 I. & N. Dec. at 185. Furthermore, it is a "well-settled principle[]" that the Federal Rules of Evidence do not apply in administrative proceedings. Dir. of Office of Thrift Supervision, U.S. Dep't of Treasury v. Lopez, 960 F.2d 958, 964 n.11 (11th Cir. 1992); see also Myers v. Sec'y of Health & Human Servs., 893 F.2d 840, 843 (6th Cir. 1990) (specifically holding that Rule 410 does not apply in administrative proceedings). Neither Kercheval nor Rule 410 categorically bars the BIA from considering Garces' withdrawn plea for any purpose. See Castano, 956 F.2d at 238 (BIA could consider as part of "reason to believe" determination a guilty plea to a cocaine trafficking charge even though the resulting conviction was later expunged for rehabilitation purposes). The question is how much evidentiary weight, under these circumstances, the BIA reasonably could give the fact that Garces pleaded guilty to the drug trafficking charge in 1984.

Given the state of the record, the simple fact that Garces entered a guilty plea can carry little or no probative weight. The record does not show that Garces made any factual admission of guilt, sworn or otherwise, in the plea proceedings. Florida's rules at the time recommended that the trial judge "should" place a defendant under oath before questioning him to ascertain the voluntariness of the

22

plea, but they did not require it.  See Fla. R. Crim. P. 3.172(c).  Regardless, the plea itself cannot be taken as an admission of guilt because Florida law in 1984, as it does today, expressly allowed a defendant to plead guilty while maintaining his innocence.  See Fla. R. Crim. P. 3.172(d) (1977) (current version at id. 3.172(e)) ("Before the trial judge accepts a guilty or nolo contendere plea, he must determine that the defendant either 1) acknowledges his guilt, or 2) acknowledges that he feels the plea to be in his best interest, while maintaining his innocence.").  This rule was adopted to permit so-called Alford "pleas of convenience."  Id. 3.172 committee note; see North Carolina v. Alford, 400 U.S. 25, 91 S.Ct. 160 (1970) (no constitutional error in accepting a guilty plea from a defendant who maintains his innocence, as long as the plea has a factual basis).

The record does not tell us whether Garces admitted his guilt and entered the plea on that basis or maintained his innocence and entered a "plea of convenience" because he was convinced it was in his best interest to do so.  In fact, the record tells us nothing at all about what happened at the plea proceeding or in whatever negotiations led up to it.  We do not know what the court asked Garces, whether he was put under oath, or whether he admitted any facts indicating his guilt.  The government argues it is Garces' burden to convince us that he did enter a "plea of convenience" or "best interests" plea while maintaining his innocence.  As we have already explained, however, supra at 18–20, our concern is not with who has the

23

burden of proof but with whether substantial evidence supports the BIA's determination. Florida's rule put the burden on the trial judge to determine that the defendant was making a knowing and voluntary plea either because he was actually guilty or because it was in his best interests to do so, see Fla. R. Crim. P. 3.172(d) (1977), but that tells us nothing about which basis the judge who accepted the plea found to exist. We can only speculate.[10] Regardless of what happened at the plea colloquy, the same state court that accepted the plea in the first place has since determined that it was not voluntarily entered. See id. 3.172(c)(8).

If the record established that Garces had indeed stood up in court and admitted the facts of the offense under oath, or that Florida procedural rules would necessarily have required him to do so, this would be a different case and the result might well be different. We need not decide whether a plea given under those circumstances would necessarily be sufficient in and of itself to establish "reason

---

[10] We have no idea what the case against Garces looked like by the time he took the plea offer, a year after his arrest. We do not know whether any of the co-defendants implicated him, or even whether the powder seized from Canevaro was tested to determine if it actually was cocaine. As an argument of last resort, the government urges us to consider Garces' willingness to enter the plea as an acknowledgment by him that the state's evidence was strong enough to convict him. Though that might have been the case, it just as well might not have been so. The reason Garces pleaded guilty could have been that the prosecutor offered him such a sweet deal, with no actual jail time, that it was too tempting for Garces to pass up and risk even a small chance of being convicted after a trial and sentenced to imprisonment. It might even be argued that the fact that the prosecutor offered Garces such leniency indicates a lack of confidence in the case against him. The point is that speculation concerning the beliefs of Garces and the prosecutor about what might have happened at trial is not "reasonable, substantial, and probative evidence."

to believe."[11]  Of course, such an admission by a defendant—especially if made under oath—would be strong evidence that he did in fact commit the crime.  As the Supreme Court has noted in another context, "[s]olemn declarations in open court carry a strong presumption of verity."  Blackledge v. Allison, 431 U.S. 63, 74, 97 S.Ct. 1621, 1629 (1977).[12]  An alien who had admitted under oath that he was guilty of the crime would have enormous difficulty convincing immigration authorities that there was no reason to believe that he had committed it.  Given the fact that Florida allows pleas of convenience without any admission of guilt, and given the state of the record, however, there is no substantial evidence that Garces admitted anything when he pleaded guilty a quarter of a century ago.  For that reason, the fact that he pleaded guilty does not corroborate the allegations in the arrest reports.

B.

We are left with only the arrest reports.  Both federal and Florida courts would exclude those documents as hearsay in a criminal case, see Fed. R. Evid.

---

[11] We also need not decide whether an alien who in the course of pleading guilty admitted having committed the criminal conduct in question would be removable under 8 U.S.C. § 1182(a)(2)(A) (removability where the alien "admits having committed, or . . . admits committing acts which constitute the essential elements of" a covered offense).  The government has not argued that under the facts of this case that provision is applicable.

[12] In Castano we stated that because the "petitioner has pleaded guilty to cocaine trafficking, it logically follows that immigration officials do not merely have reason to believe he has trafficked in narcotics, they have reason to know he has done so."  956 F.2d at 238.  But Castano, unlike Garces, never denied that he had committed the offense and did not dispute any of the factual allegations against him.

803(8) (police reports not admissible under public records hearsay exception); Fla. Stat. § 90.803(8) (same), but that does not bar them from being considered in an administrative immigration proceeding. See Lopez, 960 F.2d at 964 n.11. Even so, the BIA implicitly acknowledged the reliability concerns[13] behind Rule 803(8) when it decided to give "little weight" to arrest reports that are not corroborated by other evidence. See Arreguin de Rodriguez, 21 I. & N. Dec. at 42 ("[W]e are hesitant to give substantial weight to an arrest report, absent a conviction or corroborating evidence of the allegations contained therein. Here, the applicant conceded that the arrest took place but admitted to no wrongdoing. Considering that prosecution was declined and that there is no corroboration, from the applicant or otherwise, we give the apprehension report little weight."). The arrest reports state the police officers' conclusions (saying Garces "was involved in a cocaine deal") rather than recording their observations of facts sufficient to show guilt. And the Foreign Affairs Manual instructs immigration officers not to base a finding of inadmissibility solely on "conclusions of other evaluators . . . no matter how trustworthy." 9 FAM 40.23 Notes n.2(c).

---

[13] See Fed. R. Evid. 803(8) advisory committee's note (1974 enactment) (citing as one reason for excluding police reports that "observations by police officers at the scene of the crime or the apprehension of the defendant are not as reliable as observations by public officials in other cases because of the adversarial nature of the confrontation between the police and the defendant in criminal cases").

Even if we assume the accuracy of the facts stated in the reports, they do not say much. They say that Garces "made contact with" Canevaro, but do not tell how. They also say that after Canevaro was caught with cocaine Garces tried to drive off when the undercover officers approached his car. But no drugs or drug paraphernalia were found on Garces or in his car, and he was not in the room when Canevaro handed the drugs to the undercover officer. Of course, the "reason to believe" charge does not require evidence that Garces himself actually handled the drugs; it is enough if he knowingly aided, abetted, or conspired with someone else who did. See 8 U.S.C. § 1182(a)(2)(C)(i). But there must be some reasonable, substantial, and probative evidence that he was a "knowing and conscious participant" in Canevaro's cocaine transaction. See Rico, 16 I. & N. Dec. at 186; R-H-, 7 I. & N. Dec. at 678. Although the circumstances might give rise to some suspicion that Garces knew what Canevaro was up to, "mere suspicion" is not enough. See 9 FAM 40.23 Notes n.2(b).

Decisions of this Court and the BIA upholding "reason to believe" determinations have done so on considerably more substantial evidence. In those cases, the alien either admitted that he had trafficked in drugs, or he was caught with a significant quantity of them. See Castano, 956 F.2d at 238 & n.6 (INS "in effect 'retried'" the criminal case, introducing "lengthy evidence, both documentary and testimonial," and alien did not contest facts); Favela, 16 I. & N.

27

Dec. at 754 (alien "admitted his conscious participation" in attempt to smuggle marijuana); Rico, 16 I. & N. Dec. at 182–83 (several DEA, Border Patrol, and Customs agents testified that alien was caught at the border with 162 pounds of marijuana in his pickup truck; he told agents he knew "something" was in the truck and offered to give them information on other drug traffickers; his later story that he had only borrowed the truck for the day was contradicted by agents' testimony that they had seen him crossing the border several times before in the same vehicle); R-H-, 7 I. & N. Dec. at 678 (alien admitted he helped dealer deliver marijuana cigarettes to customers). We cite these cases not to suggest that they set a bar to be cleared, but simply to illuminate the weakness of the evidence against Garces. We do not have to define the minimum showing necessary to establish "reason to believe" in order to conclude that it was not made in this case.

## V.

The BIA's decision, terse as it is, appears to take the fact of Garces' guilty plea as an admission by him that corroborates the allegations in the arrest reports. For the reasons we have stated, it does not. Absent corroboration, the arrest reports by themselves do not offer reasonable, substantial, and probative evidence that there is reason to believe Garces engaged in drug trafficking. Accordingly, the

28

BIA's order is reversed, and the case is remanded for further proceedings

consistent with this opinion.[14]

**REVERSED AND REMANDED.**

---

[14] Garces' argument that the BIA violated his due process rights by failing to adequately explain the reasoning behind its decision is therefore moot, and we do not address it.