[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 12-12826
Non-Argument Calendar
_____

Agency No. A029-593-524

RAFAEL ANTONIO LANZAS-RAMIREZ,

Petitioner,

versus

U.S. ATTORNEY GENERAL,

Respondent.

_____

Petition for Review of a Decision of the
Board of Immigration Appeals
_____

(January 28, 2013)

Before HULL, MARCUS and KRAVITCH, Circuit Judges.

PER CURIAM:

Rafael Lanzas-Ramirez, a native and citizen of Nicaragua proceeding pro se, seeks review of the Board of Immigration Appeals' ("BIA") decision affirming the Immigration Judge's ("IJ") denial of his application for adjustment of status as a matter of discretion. After review, we dismiss in part and deny in part the petition.

The Attorney General, at his discretion, may adjust an applicant's status to that of an alien lawfully admitted for permanent residence if the alien: (1) applies for adjustment of status, (2) is eligible to receive an immigrant visa and is admissible to the United States, and (3) has an immigrant visa immediately available to him at the time his application is filed. INA § 245(a), 8 U.S.C. § 1255(a).[1] Even if an alien satisfies the statutory requirements, the Attorney General may deny the application for adjustment of status as a matter of discretion. Usmani v. U.S. Att'y Gen., 483 F.3d 1147, 1151 (11th Cir. 2007). In exercising this discretion, the Attorney General considers both significant equities and adverse factors. See Matter of Arai, 13 I. & N. Dec. 494, 495-96 (BIA 1970).

---

[1]Aliens like Lanzas-Ramirez who entered the United States without inspection generally are ineligible for adjustment of status. See INA § 245(a), 8 U.S.C. § 1225(a) (limiting adjustment of status to aliens who were "inspected and admitted or paroled into the United States"). However, Lanzas-Ramirez falls under an exception to this bar because he was the beneficiary of a family-based visa petition filed on or before April 30, 2001. See INA § 245(i), 8 U.S.C. § 1255(i). The parties do not dispute that Lanzas-Ramirez is statutorily eligible for adjustment of status.

While adjustment ordinarily will be granted in the absence of adverse factors, "[w]here adverse factors are present in a given application, it may be necessary for the applicant to offset these by a showing of unusual or even outstanding equities." Id. at 496.

Here, the IJ denied Lanzas-Ramirez's application for adjustment of status as a matter of discretion based on Lanzas-Ramirez's criminal history for sex offenses, his discredited testimony denying any inappropriate conduct and his failure to accept responsibility for his actions, all of which together indicated that he might be a danger to society. Specifically, the IJ first noted Lanzas-Ramirez's "positive equities," including his 21 years of continuous residence in the United States, compliance with the tax laws, steady employment, home ownership, close family ties, and the hardship to his wife and children, all U.S. citizens, if he were removed. The IJ then expressed concern about Lanzas-Ramirez's 1989 arrest for sexual battery and lewd and lascivious acts upon minors and a 2000 arrest and conviction for exposing his sexual organ.

In particular, in 1989, Lanzas-Ramirez was charged with one count of sexual battery and four counts of lewd and lascivious acts upon two girls under the

3

age of sixteen.[2]  In 1990, Lanzas-Ramirez entered a no contest plea to the four

counts of lewd and lascivious acts and served five years' probation.  In 2007, the

Florida state court vacated Lanzas-Ramirez's 1990 convictions because, prior to

pleading guilty, he had not been advised of the possible deportation consequences.

In 2000, Lanzas-Ramirez was arrested for exposure of a sexual organ.[3]  Lanzas-

Ramirez pled guilty to this charge and adjudication was withheld.  The IJ stated

that he did not believe he had received "honest and candid testimony" from

Lanzas-Ramirez about these two arrests and the circumstances surrounding them.

The IJ acknowledged that Lanzas-Ramirez had pled no contest to the 1989

charges and that the resulting 1990 convictions were vacated seventeen years later

because Lanzas-Ramirez had not been advised of the immigration consequences of

these convictions.  However, the IJ considered the 1989 arrest to be "very serious"

because it "involved allegations that [Lanzas-Ramirez] unlawfully and feloniously

committed sexual battery on two different minors under the age of 12 years of

---

[2]According to the 1989 arrest report and the deposition of the arresting officer, the victims, two girls who were eight and seven years old, were swimming in the pool at a state park. The two girls told the officer that Lanzas-Ramirez asked them if they wanted to ride on his inflatable alligator.  When Lanzas-Ramirez picked the girls up and placed them on the float, he pulled the girls' bathing suits away and touched their vaginal area with his fingers.  When interviewed, Lanzas-Ramirez admitted picking the girls up, but denied fondling them.

[3]According to the 2000 arrest report, an officer on foot patrol in a county park found Lanzas-Ramirez sitting in a pick-up truck facing the park where several women were jogging. As the officer approached the truck, he saw that Lanzas-Ramirez's pants and underwear were down and he was masturbating.  When Lanzas-Ramirez tried to drive away, the officer pulled him over.

age." The IJ discredited Lanzas-Ramirez's hearing testimony, in which Lanzas-Ramirez denied any wrongdoing, noting inconsistencies between Lanzas-Ramirez's claims, the arrest report, and the arresting officer's deposition testimony.

The IJ stated that he "would have been more forgiving of" the 1989 offenses had Lanzas-Ramirez not been arrested again in 2000. The IJ noted that the state of Florida withheld adjudication on this charge, which constitutes a conviction for immigration purposes. The IJ discredited Lanzas-Ramirez's testimony, in which Lanzas-Ramirez denied the 2000 incident and accused the arresting officer of being a racist who fabricated the 2000 charge. The IJ pointed out that Lanzas-Ramirez's testimony was contradicted by a detailed arrest report and his conviction and that Lanzas-Ramirez's own explanation was not believable.

The IJ also expressed concern that Lanzas-Ramirez had not accepted any responsibility for any inappropriate conduct or sought counseling or treatment "to give to the Court some assurances that an incident of this nature will not repeat itself." The IJ stated he "was troubled by the fact that there were two different arrests with a considerable amount of time in between the two arrests and [he was] very troubled by the fact that both of these arrests are indicative of an individual that should be seeking some kind of counseling or treatment." In light of these

5

stated concerns, the IJ denied adjustment of status as an exercise of discretion.

On appeal, the BIA affirmed the IJ's decision, "including the Immigration Judge's determination that [Lanzas-Ramirez's] criminal history and lack of credible testimony outweighed his strong equities in this country . . . ."  The BIA concluded that it was within the IJ's discretion to consider the circumstances surrounding Lanzas-Ramirez's 1989 arrest, despite the fact that his 1990 convictions were now vacated, and to consider Lanzas-Ramirez's lack of rehabilitation.  The BIA emphasized that Lanzas-Ramirez "had two separate incidents involving criminal conduct over a span of 11 years."[4]

As a threshold matter, we lack jurisdiction to review the discretionary decision to deny Lanzas-Ramirez's application for adjustment of status.  See INA § 242(a)(2)(B)(i), 8 U.S.C. § 1252(a)(2)(B)(i).  Thus, to the extent that Lanzas-Ramirez argues that the IJ or the BIA incorrectly weighed the equities and adverse factors in his case, we lack jurisdiction to consider this claim and dismiss the petition.

Despite this jurisdictional bar, we retain jurisdiction to review questions of

---

[4]The BIA also found no clear error in the IJ's finding that Lanzas-Ramirez was not credible and rejected Lanzas-Ramirez's claim that the IJ improperly relied on the deposition testimony of the arresting officer in the 1989 incident.  Lanzas-Ramirez's petition to this Court does not challenge these rulings.

6

law and constitutional claims.  See INA § 242(a)(2)(D), 8 U.S.C. § 1252(a)(2)(D).

Thus, we review, as purely legal questions, Lanzas-Ramirez's claims that the IJ:

(1) impermissibly considered Lanzas-Ramirez's now-vacated 1989 no-contest

plea; (2) failed to follow Matter of Arreguin, 21 I. & N. Dec. 38 (BIA 1995), by

giving great weight to the 1989 arrest report; and (3) improperly required

treatment and proof of rehabilitation.[5]

The record does not support Lanzas-Ramirez's argument that the IJ gave

"great weight to the fact that [Lanzas-Ramirez] initially pled no contest and that

his conviction was not vacated until 17 years later."  In fact, the IJ acknowledged

both that Lanzas-Ramirez pled no contest and that his 1989 convictions were

vacated seventeen years later because Lanzas-Ramirez was not advised of the

immigration consequences of the convictions.  The IJ further stated that, as a

consequence, "there no longer is a conviction" for immigration purposes.  Despite

these mitigating factors, the IJ nonetheless concluded, based on the arrest report

and the police officer's deposition, that Lanzas-Ramirez did not testify truthfully

about his actions during the 1989 incident.  Thus, the IJ did not, as Lanzas-

---

[5]We review legal issues de novo.  Zheng v. U.S. Att'y Gen., 451 F.3d 1287, 1289 (11th Cir. 2006).  "We review only the Board's decision, except to the extent that it expressly adopts the IJ's opinion."  Al Najjar v. Ashcroft, 257 F.3d 1262, 1284 (11th Cir. 2001).  Because the BIA affirmed the IJ's analysis and conclusion that adjustment of status was not warranted as a matter of discretion, we review both the IJ's and the BIA's decisions.  See id.

Ramirez claims, rely on the now-vacated guilty plea to conclude that Lanzas-Ramirez was in fact guilty of the charged offenses.  See Garces v. U.S. Att'y Gen., 611 F.3d 1337, 1344-45, 1347-48 (11th Cir. 2010) (stating that, although a conviction vacated because of a statutory or constitutional defect is "no longer a 'conviction' for immigration purposes" and a nolo contendre plea "can carry little or no probative weight," immigration officials may still consider "the facts that led to the conviction").

We also reject Lanzas-Ramirez's claim that the IJ and the BIA failed to follow their own precedent (or this Court's precedent) by considering the 1989 arrest report.  In Matter of Arreguin, the BIA stated that it was "hesitant to give substantial weight to an arrest report, absent a conviction or corroborating evidence of the allegations contained therein."  21 I. & N. Dec. at 42.  In that case, the government submitted an apprehension report alleging that the applicant attempted to smuggle aliens across the U.S. border.  Id.  The BIA concluded that it would give "little weight" to the apprehension report because prosecution for alien smuggling was declined, the applicant denied any wrongdoing at her immigration hearing and there was no corroboration of the allegations in the apprehension report.  Id.

This Court has also considered Arreguin and concluded that, although arrest

8

reports are hearsay, they may be considered in immigration proceedings. Garces, 611 F.3d at 1349-50. In so doing, we noted that in Arreguin the BIA "implicitly acknowledged . . . reliability concerns" when it decided "to give 'little weight' to arrest reports that are not corroborated by other evidence." Id.; see also Billeke-Tolosa v. U.S. Att'y Gen., 385 F.3d 708, 712 (6th Cir. 2004) (concluding the IJ erred in considering uncorroborated record of arrests for sexual misconduct involving children where the applicant was not convicted of such crimes and denied committing them).[6]

Here, unlike in Arreguin and Garces, the IJ considered not only the 1989 arrest report, but also the deposition of the arresting police officer who investigated the allegations of sexual misconduct, interviewed the two victims and a witness (the mother of one of the victims) and had a Spanish-speaking officer interview Lanzas-Ramirez. In the deposition, the officer described his investigation, including his interviews with the two victims. Thus, allegations in the 1989 arrest report were corroborated by other evidence, and the IJ and the BIA

---

[6]In Garces, we concluded that the arrest report could properly be considered, but was not sufficient to show that there was a "reason to believe" the alien engaged in drug trafficking, for purposes of INA § 212(a)(2)(C), 8 U.S.C. § 1182(a)(2)(C), because the arrest report contained only the officers' conclusions that the alien was involved in a cocaine deal and did not "record[ ] their observations of facts sufficient to show guilt." Garces v. U.S. Att'y Gen., 611 F.3d 1337, 1349 (11th Cir. 2010). Here, the 1989 arrest report does not suffer from these kinds of defects. The officer's sworn arrest narrative recounts in detail what the victims told the officer Lanzas-Ramirez did to them and what Lanzas-Ramirez said he did.

9

did not contravene Arreguin.

We also find no legal error in the IJ's consideration of the underlying facts leading to Lanzas-Ramirez's 1989 arrest.  Allegations of criminal conduct, even absent a final conviction, may be considered for immigration purposes.  See Garces, 611 F.3d at 1345 (concluding that the fact that a conviction has been vacated "for whatever reason" does not bar immigration officials from considering the facts that led to the conviction); Henry v. INS, 74 F.3d 1, 6 (1st Cir. 1996) ("[W]hile an arrest, without more, is simply an unproven charge, the fact of the arrest, and its attendant circumstances, often have probative value in immigration proceedings."); see also Matter of Thomas, 21 I. & N. Dec. 20, 23-25 (BIA 1995) (en banc) ("In examining the presence of adverse factors on an application for discretionary relief, this Board has found it appropriate to consider evidence of unfavorable conduct, including criminal conduct which has not culminated in a final conviction for purposes of the Act.").

Finally, there is no merit to Lanzas-Ramirez's claim that the IJ required him to show rehabilitation.  Rather, the IJ merely expressed concern that, in light of Lanzas-Ramirez's unwillingness to accept responsibility for his criminal conduct, the IJ could not be sure that Lanzas-Ramirez was not a potential danger to society, and stated that he could not find rehabilitation if Lanzas-Ramirez did not accept

10

responsibility for his actions.

Lanzas-Ramirez cites to no authority (and we could find none) to support his argument that rehabilitation is an impermissible factor to consider in deciding whether to grant an adjustment of status as a matter of discretion.  In the context of granting other forms of discretionary relief, the BIA has concluded that rehabilitation is a permissible factor.  See Matter of Marin, 16 I. & N. Dec. 581, 584-85 (BIA 1978) (listing "proof of a genuine rehabilitation if a criminal record exists" as a favorable consideration but stating that there is no "inflexible" test to guide agency discretion); see also In re Mendez-Moralez, 21 I. & N. Dec. 296, 299-300 (BIA 1996) (applying Marin's factors to § 212(h) waiver of inadmissibility because it also "necessarily involves at least one adverse consideration, specifically the criminal conviction or activity constituting the grounds of exclusion sought to be waived").  Nothing in the INA, the agency's regulations or the BIA's precedent precludes the IJ from considering rehabilitation (or the lack thereof) in making discretionary adjustment-of-status determinations where, as here, there was evidence the alien had engaged in criminal activity.

In sum, to the extent Lanzas-Ramirez seeks review of the discretionary denial of his request for adjustment of status, we dismiss the petition for lack of jurisdiction.  With respect to Lanzas-Ramirez's legal claims, we deny the petition.

11

**PETITION DISMISSED IN PART AND DENIED IN PART.**

12