[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 13-15487
Non-Argument Calendar
_____

Agency No. A093-112-277

ALLAN RAJESH SOOKHOO,

Petitioner,

versus

U.S. ATTORNEY GENERAL,

Respondent.

_____

Petition for Review of a Decision of the
Board of Immigration Appeals
_____

(January 2, 2015)

Before MARTIN, ANDERSON, and EDMONDSON, Circuit Judges.

PER CURIAM:

Allan Rajesh Sookhoo, a native and citizen of Trinidad and Tobago, petitions for review of the final order of the Board of Immigration Appeals ("BIA") affirming the immigration judge's ("IJ") finding of removability.  Briefly stated, Sookhoo argues in his petition for review that (1) the BIA abused its discretion by dismissing his appeal without considering his prior requests for a continuance; and (2) the BIA's dismissal order was insufficiently detailed to show that his case was fully and properly reviewed.

We review the BIA's decision as the final judgment.  *Kazemzadeh v. U.S. Att'y Gen.*, 577 F.3d 1341, 1350 (11th Cir. 2009).  We lack jurisdiction to consider claims that were not raised before the BIA.  *Sundar v. INS*, 328 F.3d 1320, 1323 (11th Cir. 2003).

We review the BIA's conclusions of law *de novo*, and we review factual determinations for substantial evidence.  *Kazemzadeh*, 577 F.3d at 1350–51; *Ruiz v. U.S. Att'y Gen.*, 440 F.3d 1247, 1254–55 (11th Cir. 2006).  Under the substantial evidence test, we draw every reasonable inference from the evidence in favor of the decision; and we reverse a finding of fact only if the record compels reversal.  *Kazemzadeh*, 577 F.3d at 1351.  That evidence in the record may also support a conclusion contrary to the administrative findings is not enough to justify a

2

reversal. *Id.* We may not review discretionary decisions, but we may review nondiscretionary legal decisions that pertain to statutory eligibility for discretionary relief. *Gonzalez-Oropeza v. U.S. Att'y Gen.*, 321 F.3d 1331, 1332 (11th Cir. 2003).

"[A] decision that an alien is not eligible for admission to the United States is conclusive unless manifestly contrary to law . . . ." Immigration and Nationality Act ("INA") § 242(b)(4)(C), 8 U.S.C. § 1252(b)(4)(C). Pursuant to INA § 212(a)(7)(A)(i)(I), an immigrant is inadmissible if, at the time of application for admission, he "is not in possession of a valid unexpired immigrant visa, reentry permit, . . . or other valid entry document required by this Act," along with an accepted document of identity and nationality. INA § 212(a)(7)(A)(i)(I), 8 U.S.C. § 1182(a)(7)(A)(i)(I). In removal proceedings, the Department of Homeland Security ("DHS") first bears the burden of proving alienage. 8 C.F.R. § 1240.8(c). Then, the alien bears the burden of (a) establishing that he is "clearly and beyond doubt entitled to be admitted" and is "not inadmissible under [INA § 212]," or (b) showing, by clear and convincing evidence, that he is lawfully present in the United States pursuant to a prior admission. INA § 240(c)(2)(A)–(B), 8 U.S.C. § 1229a(c)(2)(A)–(B); *see Garces v. U.S. Att'y Gen.*, 611 F.3d 1337, 1345–46 (11th Cir. 2010).

Parole is not admission.  *See* INA § 101(a)(13)(b), 8 U.S.C.

§ 1101(a)(13)(B); INA § 212(d)(5), 8 U.S.C. § 1182(d)(5); *Leng May Ma v.*

*Barber*, 357 U.S. 185, 190, 78 S.Ct. 1072, 1075, 2 L.Ed.2d 1246 (1958) ("The

parole of aliens seeking admission is simply a device through which needless

confinement is avoided while administrative proceedings are conducted.  It was

never intended to affect an alien's status . . . .").  When the purposes of the parole

have been served, the alien returns to the status he had when he was paroled.  INA

§ 212(d)(5)(A), 8 U.S.C. § 1182(d)(5)(A); 8 C.F.R. § 212.5(e)(2)(i).

Because alienage was established by Sookhoo's consistent admissions that

he was a native and citizen of Trinidad and Tobago, he bore the burden of proving

by clear and convincing evidence that (1) he was, for his most recent entry in July

2006, "clearly and beyond doubt entitled to be admitted" and not inadmissible; or

(2) he is lawfully present in the United States pursuant to a prior admission.  *See*

INA § 240(c)(2)(A)-(B), 8 U.S.C. § 1229a(c)(2)(A)-(B); 8 C.F.R. § 1240.8(c).

Here, the BIA's determination that Sookhoo was an arriving alien and was

removable -- as was charged in the notice to appear ("NTA") -- is supported by

substantial evidence.  *See Kazemzadeh*, 577 F.3d at 1350–51.  The record evidence

shows that Sookhoo was paroled in July 2006 to pursue adjustment of status from

USCIS, and that USCIS denied him adjustment of status in October 2009.  While

Sookhoo's wife filed two I-130 petitions for an alien relative, she withdrew the

4

first petition; and the second was denied.  Because the purpose (to pursue an adjustment) for Sookhoo's parole had been completed, he reverted back to his original status: an arriving alien without an appropriate entry document, not entitled to be admitted, and removable as charged in the NTA.  *See* INA § 212(d)(5)(A), 8 U.S.C. § 1182(d)(5)(A); 8 C.F.R. § 212.5(e)(2)(i).

Sookhoo argues that he is nonetheless entitled to admission based on a pending "CSS/Newman (LULAC) Settlement Agreements" or "LULAC/LIFE program" application.[*]  But no evidence is in the record that he filed such an application or would have been eligible for such relief.  *See* INA § 240(c)(2)(A)–(B), 8 U.S.C. § 1229a(c)(2)(A)–(B) (stating that it is the alien's burden to establish clearly and beyond doubt that he is entitled to admission).  To the extent that Sookhoo's arguments on appeal rely on his denial of the other NTA charges, they are meritless.  First, to the extent that Sookhoo continues to argue that he entered the United States in July 2006 pursuant to a grant of advance parole, he has submitted no evidence in support of the assertion.  The record thus does not compel reversal of the BIA's determination that Sookhoo was paroled in July 2006

---

[*] The claim refers to the Immigration Reform and Control Act of 1986 (the "Reform Act"); subsequent litigation involving Catholic Social Services ("CSS") and the League of United Latin American Citizens ("LULAC"), the latter of which is sometimes referred to as the "Newman" legalization case; and the Legal Immigration Family Equity Act Amendments of 2000 ("LIFE Act Amendments").  *See, e.g.*, Reform Act, Pub. L. No. 99-603, 100 Stat. 3359 (Nov. 6, 1986); LIFE Act Amendments of 2000, Pub. L. No. 106-554, 114 Stat. 2763 (Dec. 21, 2000); *Reno v. Catholic Soc. Servs.*, 509 U.S. 43, 46, 113 S.Ct. 2485, 2490, 125 L.Ed.2d 38 (1993) (discussing the Reform Act and subsequent CSS and LULAC litigation).

for the purpose of completing his application for adjustment of status.  *See*

*Kazemzadeh*, 577 F.3d at 1351.

As for Sookhoo's remaining arguments, the BIA did not abuse its discretion

in declining to grant a continuance, and the BIA's opinion is adequate to show that

Sookhoo's case was fully and properly reviewed.  Because Sookhoo did not

establish that he had been granted advance parole, the IJ -- and therefore the BIA --

lacked jurisdiction over USCIS's denial of Sookhoo's adjustment of status

application.  *See* 8 C.F.R. § 1245.2(a)(ii).  Moreover, we lack jurisdiction to

consider Sookhoo's claims about medical issues, which he did not raise before the

BIA.  *See Sundar*, 328 F.3d at 1323.  Accordingly, we deny Sookhoo's petition for

review.

**PETITION DENIED.**