[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 10-10165
Non-Argument Calendar
_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
FEBRUARY 8, 2011
JOHN LEY
CLERK

Agency No. A043-677-619


LYGLENSON LEMORIN,
a.k.a. Brother Levi,
a.k.a. Brother Luke,
a.k.a. Brother Levi-El,
a.k.a. Brother Levite,

                                                          Petitioner,


versus


U.S. ATTORNEY GENERAL,

                                                          Respondent.


_____

Petition for Review of a Decision of the
Board of Immigration Appeals
_____

(February 8, 2011)

Before TJOFLAT, CARNES and MARCUS, Circuit Judges.

PER CURIAM:

Lyglenson Lemorin, a Haitian national, petitions for review of a final order by the Board of Immigration Appeals ("BIA") denying his appeal challenging (1) the Immigration Judge's ("IJ") denial of his motion to terminate the removal proceedings against him; (2) the IJ's denial of relief under the United Nations Convention Against Torture and Other Cruel, Inhuman or Degrading Treatment or Punishment ("CAT"), 8 C.F.R. § 208.16(c); and (3) the IJ's alleged deprivations of various due process rights during the proceedings. On appeal, Lemorin argues that: (1) substantial evidence does not support the BIA's and IJ's conclusion that based on his involvement with the Moorish Science Temple ("MST") in Miami, he was removable under the three grounds provided by the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1182(a)(3)(B)(i), and listed in the Notice to Appear ("NTA"); (2) the BIA and IJ violated his due process rights; (3) the BIA and IJ violated the Double Jeopardy Clause under the Fifth Amendment; and (4) substantial evidence does not support the BIA's and IJ's finding that he was not entitled to CAT relief. After thorough review, we deny the petition.

When the BIA issues a decision, we review only that decision, except to the extent that the BIA expressly adopts the IJ's decision. Al Najjar v. Ashcroft, 257 F.3d 1262, 1284 (11th Cir. 2001). To the extent that the BIA adopts the IJ's

reasoning, we review the IJ's decision as well. Id.

We review constitutional challenges de novo. Ali v. U.S. Att'y Gen., 443 F.3d 804, 808 (11th Cir. 2006). We review the BIA's interpretation of applicable statutes de novo, but defer to the BIA's interpretation if it is reasonable. Al Najjar, 257 F.3d at 1284. We review factual findings under the substantial-evidence test. Forgue v. U.S. Att'y Gen., 401 F.3d 1282, 1286 (11th Cir. 2005). Under the substantial-evidence test, we must affirm the IJ's and BIA's decisions if they are "supported by reasonable, substantial, and probative evidence on the record considered as a whole." Al Najjar, 257 F.3d at 1284 (citation omitted). "To reverse a factual finding . . . , [we] must find not only that the evidence supports a contrary conclusion, but that it compels one." Farquharson v. U.S. Att'y Gen., 246 F.3d 1317, 1320 (11th Cir. 2001). The fact that evidence in the record may also support a conclusion contrary to the administrative findings is not enough to justify a reversal. Adefemi v. Ashcroft, 386 F.3d 1022, 1027 (11th Cir. 2004) (en banc).

A party abandons a claim by not raising it or by only making passing references to the issue on appeal. Sepulveda v. U.S. Att'y Gen., 401 F.3d 1226, 1228 n.2 (11th Cir. 2005). Also, Federal Rule of Appellate Procedure 28 provides that the argument section of an appellant's brief must contain "appellant's contentions and the reasons for them, with citations to the authorities and parts of the record on which the

3

appellant relies." Fed.R.App.P. 28(a)(9)(A); see also Kelliher v. Veneman, 313 F.3d 1270, 1274 n.3 (11th Cir. 2002) (holding that, in an employment-discrimination appeal, the plaintiff waived any challenge to an issue by only mentioning it in the summary of the argument section of the initial brief). Finally, we lack jurisdiction to consider claims not raised and therefore not exhausted before the BIA. Amaya-Artunduaga v. U.S. Att'y Gen., 463 F.3d 1247, 1250 (11th Cir. 2006); see 8 U.S.C. § 1252(d)(1).

First, we are unpersuaded by Lemorin's argument that substantial evidence does not support the BIA's and IJ's finding that he was removable under the three grounds provided in the INA. Under the INA, an admitted alien is deportable if he has engaged in terrorist activities described in 8 U.S.C. § 1182(a)(3). 8 U.S.C. § 1227(a)(4)(B). In relevant part, 8 U.S.C. § 1182(a)(3) targets an alien (1) who has engaged in a terrorist activity, (2) whom a consular officer, the Attorney General, or the Secretary of Homeland Security knows, or has reasonable ground to believe, is engaged in or is likely to engage in any terrorist activity, or (3) who is a member of a "Tier III" terrorist organization,[1] unless the alien can demonstrate by clear and convincing evidence that he did not know, and should not have known, that the

---

[1] A "Tier III" terrorist organization is a group consisting of two or more individuals who have engaged in statutorily defined terrorist activities. 8 U.S.C. § 1182(a)(3)(B)(vi)(III).

4

organization was a terrorist organization. 8 U.S.C. § 1182(a)(3)(B)(i)(I), (II), & (VI). The statute broadly defines the act of engaging in terrorist activity as including, in relevant part, (1) committing, under circumstances indicating an intention to cause death or serious bodily injury, a terrorist activity; (2) preparing or planning a terrorist activity; (3) gathering information on potential targets for terrorist activity; and (4) committing an act that the actor knows, or reasonably should know, that affords material support (a) for the commission of a terrorist activity, (b) to any individual who the actor knows or reasonably should know has committed or plans to commit a terrorist activity, or (c) to a Tier III terrorist organization, if the alien cannot satisfy the lack-of-knowledge exception. 8 U.S.C. § 1182(a)(3)(B)(iv); see Khan v. Holder, 584 F.3d 773, 777 (9th Cir. 2009) (persuasive authority noting that the statute defines the "engag[ing] in terrorist activity" phrase broadly).

On this record, substantial evidence supports the BIA's and IJ's conclusion that Lemorin was removable under all three statutory grounds listed in the NTA. First, the record shows that Lemorin actually engaged in terrorist activities, in that he had acted with the intent to cause death or seriously bodily injury, and that he had provided material support to the MST, and its leader, Narseal Batiste. As the record shows, in March 2006, Batiste, Lemorin, and five other MST members pledged allegiance to al Qaeda and discussed plans to blow up the Sears Tower in Chicago,

5

Illinois, and various FBI buildings nationwide. Moreover, even assuming that Lemorin only had committed two discrete acts of terrorism (ie., two oath ceremonies in March 2006), as he argues, those two acts still show that he had engaged in terrorist activities within the meaning of the INA, 8 U.S.C. § 1182(a)(3)(B)(i)(I).

Second, for these same reasons, there are reasonable grounds to believe that he was engaged in terrorist activities. Third, substantial evidence shows that Lemorin was a "member" of the MST group led by Batiste, because its shows that Lemorin knew the nature of the group and associated with it in several meaningful ways. And as for Lemorin's claim that MST was a bona fide national religious group and not a terrorist organization, we lack jurisdiction to address that argument because he failed to exhaust the issue by not raising it before the BIA. See Amaya-Artunduaga, 463 F.3d at 1250.

Next, we find no merit in Lemorin's claims that the BIA and IJ committed the following due process violations: (1) the IJ initially sustained only two of the three removal charges, but subsequently considered the government's motion to clarify and amended the order to sustain all three removal charges, after the IJ had instructed the parties not to file further motions; (2) the BIA denied a joint motion for a second extension of time and deprived him of a reasonable time to adequately prepare a brief; (3) the IJ failed to rule on his numerous evidentiary objections to the government's

6

submissions during the hearings, other than noting that hearsay evidence was admissible; (4) the BIA denied his challenge in this regard by merely repeating the standard of admissibility; and (5) the IJ relied "exclusively" on evidence from his previous criminal trial, such as the trial transcript and expert testimony, particularly due to the fact that he was acquitted.

"[T]he Fifth Amendment entitles aliens to due process of law in deportation proceedings." Reno v. Flores, 507 U.S. 292, 306 (1993). Accordingly, aliens must receive "notice and opportunity to be heard in their removal proceedings." Fernandez-Bernal v. U.S. Att'y Gen., 257 F.3d 1304, 1310 n.8 (11th Cir. 2001). To prevail on a due process challenge, an alien must show substantial prejudice such that the outcome would have differed "in the absence of the alleged procedural deficiencies." Patel v. U.S. Att'y Gen., 334 F.3d 1259, 1263 (11th Cir. 2003).

"Due process is satisfied only by a full and fair hearing." Ibrahim v. U.S. INS, 821 F.2d 1547, 1550 (11th Cir. 1987). The INA provides that "the alien shall have a reasonable opportunity . . . to present evidence on the alien's own behalf . . . ." 8 U.S.C. § 1229a(b)(4)(B). Under federal regulation, an alien in custody has 21 days to file a brief to the BIA, but, "upon written motion, [the BIA] may extend the period for filing a brief or a reply brief for up to 90 days for good cause shown." 8 C.F.R. § 1003.3(c)(1). "In the interests of fairness and the efficient use of administrative

7

resources," extension requests are disfavored. See BIA Practice Manual, § 4.7(c)(i). Accordingly, the BIA's policy is to grant a first briefing extension, but only to grant second requests "in rare circumstances." Id. § 4.7(c)(i)(A).

It is well settled that in administrative proceedings, the Federal Rules of Evidence do not apply. Garces v. U.S. Att'y Gen., 611 F.3d 1337, 1347 (11th Cir. 2010). "Uncontradicted hearsay evidence is admissible in deportation proceedings if it is probative and its use is not fundamentally unfair so as to deprive petitioner of due process." Tashnizi v. INS, 585 F.2d 781, 782-83 (5th Cir. 1978) (quotation omitted);[2] see also Zahedi v. INS, 222 F.3d 1157, 1164 n.6 (9th Cir. 2000) (persuasive authority holding that, in immigration proceedings, documentary evidence is admissible if it is probative and its admission is fundamentally fair).

Here, the BIA and IJ did not commit any due process violations because (1) Lemorin had notice and an opportunity to respond to the government's motion for clarification, which the IJ considered in amending the removal order to sustain all three charges in the NTA; (2) the BIA did not err in denying his second request to extend the briefing deadline because he failed to show good cause; and (3) the IJ properly addressed all of his evidentiary objections during the proceedings by stating

---

[2]In Bonner v. City of Prichard, 661 F.2d 1206, 1209 (11th Cir.1981) (en banc), we adopted as binding precedent all decisions of the former Fifth Circuit handed down before October 1, 1981.

that hearsay evidence was generally admissible in immigration proceedings. In addition, Lemorin has failed to exhaust the argument that the IJ improperly relied on records from his criminal trial because he did not raise the issue in front of the BIA.

We also reject Lemorin's argument that he was subjected to double jeopardy when the government initiated removal proceedings against him based on the same terrorism charges of which he was acquitted in a previous criminal trial. Under our law, deportation proceedings cannot form the basis of a double-jeopardy claim because double jeopardy arises in criminal proceedings, and deportation is a civil matter. De La Teja v. United States, 321 F.3d 1357, 1364-65 (11th Cir. 2003) (rejecting an alien's argument that his continuing detention pending the entry of a final order of removal violates the prohibition against double jeopardy because deportation proceedings "cannot form the basis for a double jeopardy claim" because "they are inherently civil in nature"); see Garces, 611 F.3d at 1347 (holding that immigration proceedings are not criminal trials and involve a considerably less stringent standard of proof); Cadet v. Bulger, 377 F.3d 1173, 1196 (11th Cir. 2004) (holding that the Eighth Amendment's prohibition against cruel and unusual punishment is criminal in nature, and, thus, does not apply to deportation proceedings because deportation is neither criminal nor punitive, in that it is "purely civil"). But in any event, we do not address Lemorin's double-jeopardy argument because he only

9

raises that argument for the first time on appeal and failed to exhaust the issue in front of the BIA.

Finally, we disagree with Lemorin's claim that the BIA and IJ erred in denying his application for withholding of removal based on CAT relief because substantial evidence shows that he would be tortured by the Haitian government upon deportation. Relief under CAT is a type of mandatory remedy of withholding of removal. See 8 C.F.R. § 208.16(c). To qualify for CAT relief, the applicant carries the burden of proof to establish "'that it is more likely than not that he or she would be tortured if removed to the proposed country of removal.'" Sanchez Jimenez v. U.S. Att'y Gen., 492 F.3d 1223, 1239 (11th Cir. 2007) (quoting 8 C.F.R. § 208.16(c)(2)). In turn, "torture" is defined as "any act by which severe pain or suffering, whether physical or mental, is intentionally inflicted on a person . . . when such pain or suffering is inflicted by or at the instigation of or with the consent or acquiescence of a public official or other person acting in an official capacity." 8 C.F.R. § 208.18(a)(1). Further, federal regulations provide that "[t]orture is an extreme form of cruel and inhuman treatment and does not include lesser forms of cruel, inhuman or degrading treatment or punishment that do not amount to torture." Id. § 208.18(a)(2). "In order to constitute torture, an act must be specifically intended to inflict severe physical or mental pain or suffering." Id. § 208.18(a)(5).

10

On the record before us, substantial evidence supports the BIA's and IJ's denial of CAT relief. First, because the knowledge of Lemorin's expert, Michelle Karshan, was solely derived from her experience before 2004, because Karshan failed to submit any evidence corroborating her alleged expertise in anti-terrorism efforts of the Haitian government, and because Karshan's testimony that the Haitian government employed special torture squads to interrogate detainees is contradicted by the Department of State Report of Haiti in both 2007 and 2008, substantial evidence supports the BIA's and IJ's decision to qualify Karshan as a limited witness in areas regarding Haitian country conditions and the experiences of criminal deportees in Haiti, and to give less weight to her testimony in the area of counter-terrorism efforts by the Haitian government. Moreover, because the government's expert, Maurice Geiger, took a total of 44 trips to Haiti from 1995 to 2008, while he interviewed numerous Haitian detainees, deportees, and government officials, and because Geiger had firsthand experience observing the treatment of deportees and detainees in Haiti, substantial evidence supports the BIA's and IJ's decision to give weight to Geiger's testimony, as a limited expert on Haitian prison conditions. And lastly, because Lemorin failed to satisfy his burden of showing that he would more likely than not be tortured by the Haitian government upon deportation, substantial evidence supports the BIA's and IJ's denial of Lemorin's

11

application for CAT relief.

**PETITION DENIED.**