**UNITED STATES of America,
Plaintiff,**

v.

**Jozef BOGACKI, Defendant.**

**Case No. 8:12–cv–934–T–26TGW.**

United States District Court,
M.D. Florida.

Dec. 20, 2012.

Lana L. Vahab, U.S. Department of Justice, Washington, DC, John F. Rudy, III, U.S. Attorney's Office, Tampa, FL, for Plaintiff.

Michael T. Heider, Michael T. Heider, PA, Clearwater, FL, for Defendant.

## ORDER

RICHARD A. LAZZARA, District Judge.

Before the Court are Defendant's Motion to Dismiss the Complaint to Revoke Naturalization (Dkt. 16) and Plaintiff's Response in Opposition (Dkt. 19). Also before the Court is the Plaintiff's Motion for Summary Judgment with exhibits (Dkt. 15) and Defendant's brief Response in Opposition (Dkt. 21).

### Background

Defendant Jozef Bogacki ("Bogacki"), who was born in Poland in 1962, obtained United States citizenship through naturalization in 2000.[1] The Complaint in this

---

1. He had become a permanent resident of the United States on March 26, 1997. (*See* Dkt.

action asserts that because Bogacki had committed crimes involving moral turpitude during the statutory period predating his naturalization, he was ineligible to naturalize, but managed to do so anyway by willfully concealing his criminal history. (Dkt. 1.) Bogacki filed an Answer to the complaint, in which he admitted having pleaded guilty in the Southern District of Florida, case number 05–cr–60010–KAM, to: (1) a conspiracy to bring in and harbor aliens, make false statements, commit mail fraud and wire fraud, and fraud by misuse of immigration documents in violation of 18 U.S.C. § 371; (2) wire fraud in violation of 18 U.S.C. § 1343; (3) conspiracy to commit money laundering in violation of 18 U.S.C. § 1956(h); and (4) conspiracy to defraud the United States by evading and defeating taxes in violation of 18 U.S.C. § 371. (Dkt. 10, ¶ 8; Dkt. 15, Exs. 3–5.) For those convictions, he was sentenced to 56 months' incarceration and two years of supervised release, as well as being ordered to pay a $950,000 money judgment and forfeit other ill-gotten monies and properties. (Dkt. 10, ¶¶ 8–9; Dkt. 15, Exs. 4–5.)

### Motion to Dismiss

■ Bogacki now seeks to dismiss the Government's Complaint on the theory that his denaturalization would violate the Double Jeopardy Clause of the Fifth Amendment. (See Dkt. 16.) His theory for dismissal is without merit because this is a civil denaturalization action brought under a civil statute, 8 U.S.C. § 1451(a), that does not implicate the doctrine of double jeopardy. The Double Jeopardy Clause of the Fifth Amendment declares that "no person shall be subject for the same offense to be twice put in jeopardy of life or limb." See U.S. Const. amend. V. It protects against: (1) a second prosecution for the same offense after acquittal; (2) a second prosecution for the same offense

after conviction; and (3) multiple punishments for the same offense. See North Carolina v. Pearce, 395 U.S. 711, 89 S.Ct. 2072, 23 L.Ed.2d 656 (1969). These protections, with a "rare" exception, attach to criminal proceedings only. See U.S v. Halper, 490 U.S. 435, 449, 109 S.Ct. 1892, 104 L.Ed.2d 487 (1989) (holding that it is a "rare case" where a civil fine implicates the protections of double jeopardy and specifically limiting such a case to situations in which the amount of the sanction is "overwhelmingly disproportionate" to the damages caused by the wrongful conduct and, thus, "bears no rational relation to the goal of compensating the government for its loss, but rather appears to qualify as 'punishment' within the plain meaning of the word.").

■ Furthermore, it is well-established in the Eleventh Circuit that immigration proceedings cannot form the basis of a double jeopardy claim because double jeopardy arises in criminal proceedings, and deportation is a civil matter. See Lemorin v. U.S. Att'y Gen., 416 Fed.Appx. 35, 40 (11th Cir.2011) (citing De La Teja v. United States, 321 F.3d 1357, 1364–65 (11th Cir.2003) (rejecting an alien's argument that his continuing detention pending the entry of a final order of removal violates the prohibition against double jeopardy because deportation proceedings "cannot form the basis for a double jeopardy claim" because "they are inherently civil in nature")); Garces v. U.S. Att'y Gen., 611 F.3d 1337, 1347 (11th Cir.2010) (holding that immigration proceedings are not criminal trials and involve a considerably less stringent standard of proof); Cadet v. Bulger, 377 F.3d 1173, 1196 (11th Cir.2004) (holding that the Eight Amendment's prohibition against cruel and unusual punishment is criminal in nature, and, thus, does not apply to deportation proceedings be-

10, Answer, ¶ 10.)

cause deportation is neither criminal not punitive, in that it is "purely civil").

Bogacki's denaturalization is not intended to punish him for his criminal actions. Instead, it is intended to strip him of a privilege that he was never eligible to obtain in the first place, and which he obtained only because he concealed his criminal history from the immigration authorities during the naturalization process. *See Schneiderman v. United States,* 320 U.S. 118, 122, 63 S.Ct. 1333, 87 L.Ed. 1796 (1943); *see also INS v. Pangilinan,* 486 U.S. 875, 883–884, 108 S.Ct. 2210, 100 L.Ed.2d 882 (1988) (holding that naturalization is available only upon the terms specified by Congress). 8 U.S.C. § 1421(d) specifically provides that "a person may only be naturalized as a citizen of the United States in the manner and under the conditions prescribed in this subchapter and not otherwise." As argued by the Government, the principle of rendering an illegally procured denaturalization certificate "null and void" (as opposed to punishing the citizen) was succinctly stated in *United States v. Rebelo,* 358 F.Supp.2d 400, 409–410 (D.N.J.2005), which held:

> Despite the fact that courts on occasion refer to revocation of naturalization as a "forfeiture" of citizenship, it is well established that the purpose of the denaturalization statute *is not to punish citizens,* but to protect the integrity of the naturalization process. Indeed, the United States Supreme Court has noted that denaturalization *is not imposed to penalize the alien for having falsified his application for citizenship;* if it were, it would be a punishment. Rather, it is imposed in the exercise of the power to make rules for the naturalization of aliens."

Section 340(a) of the INA, 8 U.S.C. § 1451(a), operates to render an unlawfully obtained certificate of naturalization void *ab initio* .... The effect of cancellation of naturalization *ab initio* is to render the original order of naturalization and certificate of naturalization completely null and void for purposes of derivation of citizenship benefits from such naturalization....

> ... More than ninety years ago, the United States Supreme Court explained the connection between the "relation back" theory and the need to enforce the INA's provisions: [An applicant for citizenship] can only become a citizen upon and after a strict compliance with the acts of Congress. An applicant for this high privilege is bound, therefore, to conform to the terms upon which alone the right he seeks can be conferred. It is his province, and he is bound, to see that the jurisdictional facts upon which the grant is predicated actually exist, and if they do not he takes nothing by his paper grant.

358 F.Supp.2d at 409–410 (internal citations and quotations omitted) (emphasis added). Therefore the outcome of denaturalization, unlike an excessive civil fine following a criminal conviction, is neither punitive, nor disproportionate. Bogacki's Motion to Dismiss is without merit and must be denied.

### Motion for Summary Judgment

Rule 56(c), Federal Rules of Civil Procedure, provides that summary judgment is appropriate where there is no genuine issue of material fact. Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986) (citation omitted). On a motion for summary judgment, the court must review the record, and all its inferences, in the light most favorable to the nonmoving party. *See United States v. Diebold, Inc.,* 369 U.S. 654, 655, 82 S.Ct.

993, 8 L.Ed.2d 176 (1962). Having done so, the Court finds that the Government is entitled to the entry of final summary judgment in this case.

To prevail in a denaturalization proceeding, the Government must prove its case "by clear, unequivocal, and convincing evidence which does not leave the issue in doubt." *Klapprott v. United States,* 335 U.S. 601, 612, 69 S.Ct. 384, 93 L.Ed. 266 (1949). In 8 U.S.C. § 1451(a), Congress authorized the government to seek denaturalization if the naturalized citizen either: (1) illegally procured naturalization; or (2) procured naturalization by concealment of material facts or by willful misrepresentation. An individual is deemed to have "illegally procured" naturalization if he was statutorily ineligible to naturalize at the time he became a naturalized citizen. *See Fedorenko v. U.S.,* 449 U.S. 490, 506, 101 S.Ct. 737, 66 L.Ed.2d 686 (1981). An individual is subject to denaturalization under the second ground of § 1451(a) if he procured naturalization by either concealment or misrepresentation, if the concealment or misrepresentation was willful, and if the fact at issue was material. *See Kungys v. United States,* 485 U.S. 759, 767, 108 S.Ct. 1537, 99 L.Ed.2d 839 (1988) (citing *Fedorenko,* 449 U.S. at 507, n. 28, 101 S.Ct. 737). When a court determines that the government has met its burden of proving that a naturalized citizen obtained his citizenship illegally, or by willful concealment or misrepresentation, it has no discretion to excuse the conduct, and must enter a judgment of denaturalization. *Fedorenko,* 449 U.S. at 517, 101 S.Ct. 737. Accordingly, summary judgment is a proper method to order denaturalization where the facts are undisputed and the legal elements for a denaturalization claim are met. *See, e.g., United States v. Jean–Baptiste,* 395 F.3d 1190, 1196 (11th Cir.2005).

Here, the relevant facts are undisputed and the Government easily meets its burden of proving the elements for a denaturalization claim. Bogacki was required to be a person of good moral character from December 27, 1994, through December 15, 2000, the five-year period before the date he filed his application for naturalization and continuing until the date that he took the oath of allegiance and became a United States Citizen (the "statutory period"). *See* 8 U.S.C. § 1427(a)(3); 8 C.F.R. § 316.10(a)(1). As a matter of law, an alien necessarily lacks good moral character if, during the statutory period, he has been convicted of a crime involving moral turpitude ("CIMT"). *See* 8 U.S.C. § 1101(f)(3) (cross-referencing 8 U.S.C. § 1182(a)(2)(A)(i)(I))2; 8 C.F.R. § 316.10(b)(2)(i). The commission of a crime involving fraud or dishonesty qualifies as a crime involving moral turpitude. *See Jordan v. De George,* 341 U.S. 223, 229, 71 S.Ct. 703, 95 L.Ed. 886 (1951) (holding "it is therefore clear, under an unbroken course of judicial decisions, that the crime of conspiring to defraud the United States is a 'crime involving moral turpitude.' "); *see also Itani v. Ashcroft,* 298 F.3d 1213, 1215 (11th Cir.2002) (holding that, generally, a crime involving dishonesty or a false statement is one involving moral turpitude).

Bogacki pleaded guilty to, and was convicted of, committing crimes involving fraud and dishonesty during the statutory period, namely (1) conspiracy to bring in and harbor aliens, make false statements, commit mail fraud and wire fraud, and fraud by misuse of immigration documents in violation of 18 U.S.C. § 371; (2) wire fraud in violation of 18 U.S.C. § 1343; (3) conspiracy to commit money laundering in violation of 18 U.S.C. § 1956(h); and (4) conspiracy to defraud the United States by evading and defeating taxes in violation of 18 U.S.C. § 371. According to the indict-

ment, which is referenced in Bogacki's guilty plea, the acts underlying these crimes took place within the five-year statutory period, having started on September 24, 1997, and continuing through his arrest on in 2005. (*See* Dkt. 15, Ex. 3: Count 1 at p. 35, ¶ 50; Counts 2, 3 and 24, at p. 29, Table; Count 25, at p. 32, ¶ 36; Count 26 at p. 35, ¶¶ 49–50.) Furthermore, Bogacki does not fall within any exceptions to the CIMT bar. *See* 8 U.S.C. § 1182(a)(2)(A)(ii).

■ Bogacki collaterally attacks his conviction in his Answer to the Complaint, claiming that: (1) he unknowingly entered into the referenced plea agreement without adequate consultation and effective assistance from counsel (*see* Dkt. 10, Answer ¶¶ 8, 33, 38); (2) that he did so without realizing the effect his plea would have on his naturalization (*see id.*); and (3) that he never committed the crimes enumerated in his plea agreement during the period specified in the denaturalization complaint as well as his indictment (*see id.* at ¶¶ 7, 22, 38). Bogacki is precluded, however, from using this proceeding to challenge the facts admitted in his plea agreement and, as a matter of law, the Court must conclude that Bogacki illegally procured his naturalization because his criminal activity rendered him a person lacking the requisite good moral character necessary to naturalize. *See Taylor v. United States,* 396 F.3d 1322, 1330 (11th Cir.2005) (holding that an individual cannot collaterally attack criminal convictions in immigration cases); *see also* 8 U.S.C. §§ 1101(f)(3) & 1451(a). Bogacki simply cannot escape the negative impact that the commission of these unlawful acts had on his moral character. Bogacki is subject to denaturalization under 8 U.S.C. § 1101(f) and 8 C.F.R. § 316.10(b)(3)(iii) based on his commission of these crimes.

■ The Court's conclusion that Bogacki is subject to denaturalization is only bolstered by his willful concealment and misrepresentation of his criminal history prior to naturalizing, which serves as a legally distinct ground for denaturalization under 8 U.S.C. § 1451(a), although it arises from the same basic facts as the illegal procurement grounds. For a court to revoke a grant of citizenship on this basis: (1) the naturalized citizen must have misrepresented or concealed a fact; (2) the misrepresentation or concealment must have been willful; (3) the fact must have been material; and (4) the naturalized citizen must have procured citizenship as a result of the misrepresentation or concealment. *Kungys,* 485 U.S. at 767, 108 S.Ct. 1537. The Government demonstrates that these elements exist here.

First, in his N–400 Application for Naturalization, Bogacki gave the following responses that were false in light of his criminal history:

(1) Part 7, question 15(a) of the N–400 asked if Bogacki had ever "knowingly committed any crime for which you have not been arrested?" Bogacki answered "No." (Dkt. 10, Answer, ¶ 12.)

(2) Part 7, question 12(d) of the N–400 asked if Bogacki had ever "knowingly and for gain helped any alien to enter the U.S. illegally?" Bogacki answered "No." (*Id.* at ¶ 13.)

Second, Bogacki concealed his criminal history on the Form N–445, which he was asked to fill out before taking the naturalization oath on December 15, 2000. (*See* Dkt. 15, Ex. 2.) Specifically, Question 3 of the Form N–445 asked Bogacki whether since the date of his interview, he "knowingly committed any crime or offense, for which you have not been arrested ...." (*Id.*) Bogacki answered "No" to this question. (*Id.*) This answer was false because since his November 8, 2000, interview, Bogacki continued to engage in the criminal activities to which he pleaded guilty on

September 13, 2006. (*See* Dkt. 15, Exs. 3–5.) When Bogacki pleaded guilty to his crimes, he admitted that his actions were "knowing" and "willful." (*See* Ex. 4, Guilty Plea, ¶ 1; Ex. 3, Indictment, Count 1, ¶ 19 at pp. 5–7, Count 2, 3 and 24, ¶¶ 33–34 at p. 28, Count 25, ¶ 36, at pp. 32–33, Count 25, ¶ 50, at p. 35.) Thus, the Court must agree with the Government that Bogacki is collaterally estopped from denying that at the time he answered questions on both the N–400 and the N–445, he knew that he had committed these crimes. When Bogacki answered "No" under oath at his naturalization interview in response to questions 15(a) and 12(d), he knew that he was not telling the truth. Likewise, when he entered "No" Question 3 of the Form N–445, he knew that he was not telling the truth.

■ Third, the criminal history information that Bogacki concealed and misrepresented during the naturalization process was material as a matter of law. A misrepresentation or concealment is material to one's naturalization if the misrepresentation "ha[s] a natural tendency to produce the conclusion that the applicant [is] qualified" to naturalize when in fact, he is not. *Kungys*, 485 U.S. at 772, 108 S.Ct. 1537. Bogacki's failure to disclose his involvement in this criminal enterprise meets this criteria because, had he disclosed these crimes, the INS necessarily would have denied his naturalization application. *See* 8 U.S.C. § 1427(a)(3); 8 U.S.C. § 1101(f)(3) (cross-referencing 8 U.S.C. § 1182(a)(2)(A)(i)(I)); 8 C.F.R. § 316.10(b)(2)(i).

Finally, because Bogacki concealed information that would have shown his ineligibility to naturalize, he necessarily meets the "procurement" prong of the test. Bogacki obtained his naturalization in a proceeding where he made a material misrepresentation and, thus, he was "presumably disqualified" from naturalizing. *See Kun-*

*gys*, 485 U.S. at 777, 108 S.Ct. 1537. Bogacki would only be able to rebut that presumption by showing that he would have, in fact, met the naturalization requirement—*i.e.*, good moral character—called into question by his misrepresentations and concealment. *See id.* The foregoing analysis plainly shows that Bogacki is unable to make such a showing.

**ACCORDINGLY,** it is **ORDERED AND ADJUDGED:**

1. Defendant's Motion to Dismiss the Complaint to Revoke Naturalization (Dkt. 16) is denied.

2. The Government's Motion for Summary Judgment (Dkt. 15) is granted.

3. The Clerk is directed to enter judgment against Defendant.

4. The Court hereby revokes and sets aside Defendant's naturalization, and cancels his Certificate of Naturalization No. 26 033 248, issued to Defendant on December 15, 2000, and forever restrains and enjoins Defendant from claiming any rights, privileges, or advantages under any document that evidences the United States citizenship he obtained as a result of his December 15, 2000, naturalization.

4. Defendant, Defendant's counsel, and counsel for the Government or her duly authorized representative, are directed to appear before this Court on Thursday, January 10, 2013, at 10:00 a.m., in Courtroom 15B, United States Courthouse, 801 North Florida Avenue, Tampa, Florida, for the purpose of Defendant surrendering and delivering his Certificate of Naturalization and any other indicia of United States citizenship (including, but not limited to, United States passports, voter registration cards, and other voting documents), and any copies thereof in his possession for delivery to Government counsel or her duly authorized representative. Defendant is also directed to recover any of

these documents and materials that he knows are in the possession of others and bring them to this hearing for delivery to Government counsel or her duly authorized representative. Defendant's failure to appear and produce this documentation will result in the imposition of sanctions, including an order to the United States Marshal Service to immediately bring Defendant before the Court.

5. Defendant's counsel is directed to *personally* deliver a copy of this order to Defendant no later than Friday, December 21, 2012.