[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 13-11128
Non-Argument Calendar
_____

Agency No. A070-787-916


BARKAT KARIM BHAI,
MINAZ BARKAT MAKNOJIA BHAI,

Petitioners,

versus

U.S. ATTORNEY GENERAL,

Respondent.

_____

Petition for Review of a Decision of the
Board of Immigration Appeals
_____

(January 28, 2014)

Before HULL, WILSON and ANDERSON, Circuit Judges.

PER CURIAM:

Barkat Bhai and his wife Minaz Bhai ("Minaz"), natives and citizens of Pakistan, seek review of the Board of Immigration Appeals' ("BIA") decision affirming the Immigration Judge's ("IJ") final removal order. After review, we dismiss in part and deny in part the petition.

## I.    BACKGROUND FACTS

### A.    Illegal Entry and State Conviction

In 1991, Bhai entered the United States without inspection. In 1992, Bhai was convicted in California state court of the misdemeanor offense of "annoy[ing] and molest[ing] a child" and was sentenced to a suspended 180-day jail term, followed by three years of probation.

### B.    1993 Asylum Application

In May 1993, Bhai filed an asylum application claiming political persecution based on his membership in the Mohajir Quomii Mahaz ("MQM") party. In his asylum application, Bhai said that "workers of IJI [a]nd other groups and professional men hired by the politicians manhandled [him] several times," and they would approach him while he was having tea in a snack shop, spit in his tea, and throw sand in his food. Bhai also recounted an incident in which the police jailed him for ten days after he fought with a police officer's son, as follows:

> Once Rehmat[,] that is the son of the police officer in charge[,] was beating me with a stick[;] in self-defense I wrestled with him and we fell on a hard surface[,] injuring both of us. The police threw me in jail for 10 days.

2

No decision was rendered on the 1993 application, however, because, according to Bhai, he did not attend the asylum interview.

## C.    1995 to 2005

In June 1995, Minaz entered the United States without inspection and married Bhai a few weeks later. The Bhais moved to Georgia, where they had three children, and Bhai worked as a convenience store manager.

## C.    2005 Application for Adjustment of Status and 2006 Interview

In 2005, Bhai filed an I-485 application for adjustment of status seeking permanent residence based on his approved I-140 petition.[1] On the application, Bhai checked the "No" box in response to the question, "Have you ever, in or outside the U.S. . . . been arrested, cited, charged, indicted, fined, or imprisoned for breaking or violating any law or ordinance, excluding traffic violations?" Bhai signed the application under penalty of perjury.

After an interview in 2006, the U.S. Citizenship and Immigration Services ("USCIS") denied Bhai's adjustment application in 2009 because Bhai: (1) failed to register as a sex offender in Georgia; (2) did not accurately respond to questions on his application concerning his criminal history; and (3) told the interviewing USCIS officer that he had never been arrested or convicted. USCIS also revoked Bhai's alien worker status.

---

[1] In 2004, Bhai's employer had filed an I-140 petition for alien worker status on Bhai's behalf, which was approved.

**E.    Commencement of Removal Proceedings**

Soon after, in July 2009, the Department of Homeland Security ("DHS") initiated removal proceedings against both Bhai and Miraz, and later their cases were consolidated.  DHS initially sought Bhai's expedited removal based on his prior conviction.  In September 2009, however, Bhai's conviction was vacated.  Ultimately, DHS charged both Bhai and Miraz with being removable under INA § 212(a)(6)(A)(i), 8 U.S.C. § 1182(a)(6)(A)(i), as aliens who were present in the United States without being admitted or paroled, and charged Bhai with being inadmissible, pursuant to INA § 212(a)(6)(C)(i), 8 U.S.C. § 1182(a)(6)(C)(i), as an alien who, by fraud or willful misrepresentation, had sought to procure an immigration benefit.

**F.    2009 Applications for Asylum, Adjustment of Status, and Cancellation of Removal**

In October 2009, Bhai filed a second application for asylum, withholding of removal, and CAT relief, claiming persecution based on his political opinion.  Bhai's 2009 asylum application claimed that he was persecuted in Pakistan by members of the Pakistan People's Party ("PPP") because he was an MQM member. [2]

_____

[2]Bhai's wife, Minaz, was included in his 2009 applications for adjustment of status and asylum as a derivative beneficiary.  Although our opinion refers to Bhai, our holding as to the asylum and CAT claims apply equally to his wife.  We deny Minaz's withholding of removal

4

According to Bhai's 2009 asylum application, he became an active member of the MQM beginning in 1987 or 1988, and attended rallies, made banners, and "assisted with party communications, advertising, and other organizational efforts." After the MQM lost the 1988 elections and the PPP came to power, PPP members harassed, tortured, and killed MQM members. Bhai said that PPP members followed him on multiple occasions and that, once, PPP members spit in his tea and threw sand in his food while he was eating at a hotel.

In addition, Bhai claimed that, in 1990, he "was arrested by the police at [his] home" and "detained in jail for 10 days," although he was "never formally charged." While detained, Bhai was "beaten, punched, kicked, and [he] lost consciousness," Bhai was also "not given any food." Bhai claimed that "[t]he police knew that [he] was a member of MQM because they had seen [him] at multiple MQM rallies."

Bhai's asylum application stated that, "[a]fter [he] was released from jail, [he] was monitored and harassed by PPP supporters." Twice PPP supporters "grabbed [Bhai's] scooter from behind when [he] was in an alley," but Bhai managed to escape each time. Bhai hid indoors until he left for the United States in 1991.

---

claim because "there are no derivative benefits associated with the grant of withholding of removal." See Delgado v. U.S. Att'y Gen., 487 F.3d 855, 862 (11th Cir. 2007). Minaz also filed her own applications for cancellation of removal and adjustment of status, which were denied. The petition for review does not challenge those rulings.

Bhai's application alleged that in 1997, the PPP were looking for him, but found Bhai's uncle and "tortured him to give [Bhai's] address." When Bhai's uncle did not give an address, the PPP "shot him to death." The PPP then "harassed [Bhai's] dad," who Bhai said was "too old to bear the mistreatment everyday," and "passed away with a severe heart attack in 2004." The PPP "keep inquiring about [Bhai] from [his family] members who have to change their addresses."

Bhai also submitted affidavits from his mother and his cousin, Rahim, from Karachi, Pakistan. Bhai's mother stated that she was present when Bhai "was detained by police officials who supported the People's party movement." After ten days, she secured Bhai's release and took him to the hospital for treatment. Bhai's mother stated that, after Bhai's release, men kept coming to her house, harassing her and her family, and trying to discover Bhai's hiding place. The men also harassed Bhai's father and uncle, and Bhai's uncle was "shot on the road in 1997." The harassment caused Bhai's father significant stress, which resulted in a fatal heart attack. Bhai's mother stated that the PPP is "still looking to find [Bhai's] current location so that they can kill him."

Bhai's cousin Rahim stated that Bhai and his uncle had owned a shop together in Karachi and that a "strong political group" caused Bhai to flee the country in 1991. The political group repeatedly looted the shop and threatened to

6

kill them if they filed a police report.  Rahim said that, on September 27, 1997, the political group "shot dead" Bhai's uncle "in the shop."  Further, the political group continues to harass and threaten Bhai's family.  As a result Bhai's family, including Rahim, is forced to "shift their houses" from time to time to protect themselves.

In 2009, Bhai also filed a second application for adjustment of status based on his previously approved application for a labor certification.  On that application, Bhai checked the "Yes" box when asked whether he had ever been arrested for breaking the law and cited his 1992 conviction that was vacated in 2009.  The same day, Bhai also filed an application for cancellation of removal based on the hardship to his U.S.-born children.

## G.    2009 Credible Fear Interview

In 2009, Bhai attended a credible fear interview with an asylum officer. Bhai stated that, in 1990, the police arrested him and detained him for ten days. According to Bhai, the local, uniformed police came to his home, dragged him out and "put [him in] jail, beat [him] up, didn't give [him] any food."  Bhai stated that they sometimes beat him and kicked him until he was unconscious.

After his mother secured Bhai's release, Bhai had "small problems" when he encountered the PPP in alleys while riding his scooter, but he "got away."  Bhai stopped going out.  Bhai had no further problems with the police, but said the

7

police "hover[ed] around" his house for about a month after his release. Bhai claimed that "the police and PP members are all looking for [him]," and he feared the police and the PPP would kill him if he returned to Pakistan. Bhai stated that MQM members were still targeted and the PPP either "do it themselves or they get it done through the police."

Bhai stated that his uncle "was okay" until 1992, when PPP members found out that he was Bhai's uncle. The PPP made inquiries of Bhai's uncle and threatened and harassed him, and in 1997, the PPP killed him.

After Bhai's uncle was killed, Bhai's father took over his brother's (Bhai's uncle's) shop. Two or three times a week, PPP members would come to the shop and threaten Bhai's father. The PPP members said that what had happened to his brother would happen to him and his family and that they would find his son (Bhai) and beat him up. Bhai's father "was always in fear, he was moving from place to place." Bhai said that his family in Pakistan has "stayed in hiding" and has "tried to stay away from the PPP or the police."

## H.    IJ Hearing in 2011

On February 3, 2011, an IJ held a consolidated hearing on removability and the merits of each of Bhai's applications for relief. Bhai and Minaz admitted the allegations regarding, and conceded removability based on, the charge that they were present in the United States without being admitted or paroled. However,

8

Bhai contested the additional charge that he was inadmissible under INA § 212(a)(6)(C)(i), 8 U.S.C. § 1182(a)(6)(C)(i), because he had misrepresented his criminal history when he applied for adjustment of status in 2005.

The IJ heard testimony from Bhai, Minaz, and Officer Richard Lee, the USCIS line adjudicator who conducted Bhai's 2006 adjustment of status interview. All three witnesses agreed that at the interview Officer Lee asked Bhai (at least twice) whether he had been arrested or convicted and that Bhai answered "no."

Officer Lee had no independent recollection of the 2006 interview, but testified that he knew from his general practice and the marks he had made on the adjustment application that he had asked Bhai about his criminal history. Lee maintained that Bhai did not tell him about the conviction during the interview because Lee would have made a note on the adjustment application about it and then would have had Bhai initial the notation.

Bhai testified that he answered "no" to Lee's question during the 2006 interview because he did not speak English well at that time and had not understood the words "arrest" or "conviction." However, Bhai said that, when Lee showed him a copy of his 1992 conviction, Bhai had explained to Lee that he had not understood the question and had not meant to lie. Bhai explained that he thought "no" was the correct answer to Officer Lee's question because he only went to jail once for one or two hours, he had not "done any crime," and he "did

9

not go in the jail several times." On cross-examination, Bhai stated that he answered "no" to Lee's question because he "thought that this is over" and he had "finished the procedure of the court and . . . the case was over." When Bhai was asked for his understanding of the word "arrest" at the time of his interview, Bhai insisted that he was "not a criminal." The government asked the IJ to instruct Bhai to answer the question. The IJ stated, "We've asked him several time[s]. He's not answering the questions."

With respect to his 2005 adjustment application, Bhai stated that his prior attorney had completed the application for him and never asked him about his criminal history. Bhai maintained that he did not know the application included a question about his criminal history.

After this evidence, the IJ sustained the fraud-based charge of inadmissibility against Bhai, finding Officer Lee "far more credible than" Bhai and Bhai's "story somewhat implausible." The IJ's ruling rendered Bhai ineligible for adjustment of status and cancellation of removal.

The IJ then heard testimony on Bhai's asylum application. Bhai testified that he had been an active member of the MQM in Pakistan and organized and oversaw MQM rallies in Karachi. After the PPP came to power, its member began kidnapping, beating, and killing MQM members.

10

About nine months before Bhai came to the United States, five or six men dressed as police officers entered his home, took him away in a car, and kept him in a darkened house, where he was beaten and given food fit only for a dog. After ten days, his mother secured his release with the help of members of the community. Once released, Bhai was hospitalized for ten days. He then went into hiding, moving from one relative's home to another until he left for the United States. Bhai said that his uncle was killed by the PPP in 1997 and that Bhai feared the PPP would kill him if he returned to Pakistan.

On cross-examination, the government read from Bhai's 1993 asylum application, in which he stated that the police threw him in jail for ten days because he got into a fight with the police chief's son. The government then asked Bhai to explain the inconsistencies between his 1993 asylum application and his hearing testimony. Bhai stated that he had not understood English, as follows:

> [Bhai]:    I don't understand why people always think that I (indiscernible), because I don't understand in English what is it.
>
> [Government]:    Okay. But, sir, your asylum application also refers to your MQM membership. Weren't you a member of MQM?
>
> [Bhai]:    Yes, it is right.
>
> [Government]:    And what about the activities listed in your asylum application regarding your day-to-day activities with the party, aren't those details correct?
>
> . . . .

11

[Bhai]:        Yes.

[Government]:        Okay.  But you're saying the part about your actual arrest in Pakistan is not correct?

[Bhai]:        I didn't understand.

[Government]:  So it's your contention that all of the information in this asylum application from 1993 related to your detention is not correct?

[Bhai]:        I don't know where (indiscernible).

. . . .

[Government]:        So there's also no mention in this asylum application of a ten-day   hospital stay.  How do you explain that?

[Bhai]:        I don't know why (indiscernible).  Looks like he didn't ask me.

Bhai also admitted that his mother and brother continued to live in Pakistan and had not been arrested, detained, or tortured.  Bhai also admitted that his uncle was not an MQM member.  Bhai said that his uncle was killed solely because he knew Bhai and that the PPP killed him as he drove away on a scooter.

The IJ then showed Bhai the transcript of his 2009 credible fear interview, in which Bhai stated that local police had taken him for ten days.  The IJ asked Bhai whether he knew in 2009 that the men were not in fact police.  Bhai responded that he was "now so confused" as to whether they were the police "or somebody in the police dress."  Bhai said the men were dressed as the police, but took him to a house rather than the police station, which "means that they were not police."

12

## I.    IJ's Decision

In his oral decision, the IJ found Bhai removable under INA § 212(a)(6)(A)(i), 8 U.S.C. § 1182(a)(6)(A)(i), as an alien present in the United States without being admitted or paroled.  The IJ further found that Bhai was also removable under INA § 212(a)(6)(C)(i), 8 U.S.C. § 1182(a)(6)(C)(i), as an alien who by fraud or willful misrepresentation sought to procure an immigration benefit.

The IJ found that Bhai's "testimony concerning the misrepresentation is not credible," and gave "greater credence to the testimony of Donald Lee."  In support of his credibility determination, the IJ noted that Bhai's testimony that his attorney filled out the adjustment application without asking Bhai relevant questions about his criminal record "seem[ed] somewhat implausible."  The IJ further stressed that Bhai had not submitted any documents from his prior attorney to corroborate his claim or filed a complaint against his prior attorney with the bar.

The IJ also found Bhai's testimony about his ability to understand English "to be somewhat evasive" and found that Bhai's explanation that he did not know the meaning of the words "arrest" and "conviction" "to be without credence."  The IJ noted that Bhai was educated and that the words were not complicated.  The IJ found it implausible that Bhai did not understand the words "arrest" and "conviction" given that he had been living in the United States for fifteen years at

the time of his adjustment interview and he had, in fact, been arrested and convicted in California.  Further, Bhai never explained what he understood the words "arrest" and "conviction" to mean and his demeanor when answering questions about his understanding of those words was evasive.  The IJ also found it implausible that Bhai would have answered "no" in the adjustment interview if he did not fully understand the meaning of the word arrest.

In light of the IJ's findings that Bhai misrepresented his criminal history in his 2005 adjustment application and in his 2006 adjustment interview, the IJ concluded that Bhai was inadmissible under INA § 212(a)(6)(C)(i), 8 U.S.C. § 1182(a)(6)(C)(i), and thus was ineligible for adjustment of status and cancellation of removal.

The IJ denied Bhai's application for asylum and withholding of removal because Bhai "ha[d] not met his threshold burden of presenting credible and consistent evidence and documents in support of his application."  The IJ pointed out that Bhai's 2011 hearing testimony about his ten-day detention in Pakistan was inconsistent with Bhai's statement in his original 1993 asylum application, his mother's statement in support of Bhai's 2010 asylum application, and his 2009 credible fear interview.  Specifically, at the 2011 hearing, Bhai claimed that the men who took him from his mother's home and detained him for ten days were merely dressed as police officers, but were not in fact police.  However, Bhai's

14

2009 asylum application, his 2009 credible fear statement, and his mother's 2010 affidavit all identified the men as real police officers who were supporters of the PPP. The IJ concluded that this was "a significant discrepancy" that went "to the heart of [Bhai's] claim that he was detained in Pakistan for about ten days." The IJ also noted that Bhai did not mention hospitalization at his credible fear interview.

The IJ identified several implausibilities in Bhai's claim. Specifically, the IJ found it implausible that: (1) the PPP did not bother Bhai's family in Pakistan for seven years after Bhai left, but then killed Bhai's uncle as retaliation against Bhai; (2) Bhai's father then "place[d] himself in harm's way" by taking over the uncle's store, where the PPP had come looking for Bhai and had killed the uncle; and (3) neither the PPP's ten-day detention of Bhai in 1990 nor the PPP's killing of Bhai's uncle in 1997 was ever reported to the Pakistan police. Based on the forgoing, the IJ found that Bhai had "not met his burden of presenting a credible, consistent, plausible and believable account of his claim," and denied his claim on that basis.

Alternatively, the IJ denied Bhai's asylum and withholding of removal claims "on the merits." The IJ concluded that Bhai had failed to show past persecution by the Pakistani government or a group that the government was unwilling or unable to control. The IJ noted that Bhai did not present any evidence that the men who targeted him worked for the government. Instead, Bhai claimed that his harassers were private individuals associated with the PPP. And, as Bhai

15

never made the government aware that these men sought to harm him, he did not show the government could not control them.

The IJ also found that Bhai failed to establish that he had a well-founded fear of persecution. The IJ pointed out that (1) Bhai had not shown he could not relocate within Pakistan to avoid harm, (2) Bhai's father had continued to live in Pakistan unharmed, and (3) given Bhai's "less than important role" in the MQM, Bhai had not explained why anyone in Pakistan would want to harm him 21 years after he left Pakistan.

Because Bhai was not eligible for asylum, the IJ concluded that Bhai was also ineligible for withholding of removal. The IJ also found that Bhai had failed to show that it was more likely than not that he would be tortured if returned to Pakistan, and thus, he was not entitled to CAT relief.

## J.    BIA Appeal

In his appeal to the BIA, Bhai argued that the IJ had erred in finding that: (1) he was inadmissible because he misrepresented his criminal history in his 2005 adjustment application and interview; and (2) he had not established eligibility for asylum or withholding of removal based on past or future political persecution.

The BIA affirmed the IJ and dismissed Bhai's appeal. With respect to Bhai's inadmissibility under INA § 212(a)(6)(C)(i), 8 U.S.C. § 1182(a)(6)(C)(i), the BIA concluded that the IJ did not clearly err in finding Bhai's testimony not

16

credible and in giving greater credence to Lee's testimony.  Because Bhai was inadmissible under INA § 212(a)(6)(C)(i), 8 U.S.C. § 1182(a)(6)(C)(i), and was not eligible for a waiver of inadmissibility, the BIA also affirmed the IJ's denial of Bhai's application for adjustment of status.

With respect to Bhai's asylum claim, the BIA found no clear error in the IJ's adverse credibility finding.  The BIA noted some of the inconsistencies between Bhai's 2011 hearing testimony, his 1993 and 2009 asylum applications, and his statements during his 2009 credible fear interview.  At his hearing, Bhai testified that he was detained by men dressed in police uniforms, but that he later learned they were not actually police officers.  In contrast, in his credible fear interview, Bhai referred to the men as police.  In her affidavit in support of Bhai's 2009 asylum application, Bhai's mother also had said that the men were police.  The BIA also pointed out that in his 1993 asylum application, Bhai said that the police jailed him because he had fought with the police chief's son.  As had the IJ, the BIA concluded that these inconsistencies went to the heart of Bhai's claim because they involved both the identity of his captors and the events that led to his detention.

In addition, the BIA affirmed the IJ's finding that some of Bhai's testimony was implausible, specifically noting Bhai's testimony that his uncle was killed by men who were looking for Bhai.  The BIA questioned the fact that seven years had

passed without incident between Bhai's 1990 detention and his uncle's death in 1997.  The BIA agreed that it was implausible that Bhai's father would knowingly place himself in harm's way by taking over the uncle's shop and also that Bhai's father would not then be harmed by the same men who had killed his uncle and were reportedly still looking for Bhai.  Finally, the BIA deferred to the IJ's finding that Bhai's testimony was evasive and non-responsive.

The BIA also concluded that Bhai had failed to demonstrate a well-founded fear of future persecution because: (1) Bhai did not sufficiently corroborate his claim that his uncle was killed by people looking for Bhai; and (2) Bhai did not show why anyone in the Pakistan government would be interested in him more than twenty years after his departure and fifteen years after his uncle's death, particularly given that Bhai's family remained in Pakistan unharmed.

Given that Bhai had not established asylum eligibility, the BIA concluded that Bhai also failed to meet the higher evidentiary burden for withholding of removal.  It further concluded that Bhai had not demonstrated entitlement to CAT relief because he had not shown that he more likely than not would be tortured in Pakistan.  The Bhais filed this petition for review.

## II.  DISCUSSION

### A.    Bhai's Inadmissibility under INA § 212(a)(6)(C)(i)

Under INA § 212(a)(6)(C)(i), 8 U.S.C. § 1182(a)(6)(C)(i), "[a]ny alien who, by fraud or willfully misrepresenting a material fact, seeks to procure . . . a visa, other documentation, or admission into the United States or other benefit provided under [the INA] is inadmissible."  Where an alien is charged with inadmissibility, he has the burden of proving that he is "clearly and beyond doubt entitled to admission, and that he [is] not inadmissible under any of the grounds enumerated in 8 U.S.C. § 1182(a)."  Garces v. U.S. Att'y Gen., 611 F.3d 1337, 1345-46 (11th Cir. 2010) (quotation marks omitted); see also INA § 240(c)(2)(A), 8 U.S.C. § 1229a(c)(2)(A).[3]  To qualify for adjustment of status under INA § 245(i), 8 U.S.C. § 1255(i), an alien must be "admissible" to the United States.  See INA § 245(i)(2)(A), 8 U.S.C. § 1255(i)(2)(A).[4]

Substantial evidence supports the IJ's decision to sustain the fraud-based charge of inadmissibility against Bhai and therefore deny his application for adjustment of status.  It is undisputed that in 1993 Bhai was arrested and convicted in California of a crime, that Bhai inaccurately stated under oath on his 2005

---

[3]There is no merit to Bhai's argument that the BIA improperly applied the clearly erroneous standard of review in affirming the IJ's finding of inadmissibility under INA § 212(a)(6)(C)(i), 8 U.S.C. § 1182(a)(6)(C)(i).  The BIA's decision explicitly states that it reviewed "whether the parties met the relevant burden of proof . . . under the *de novo* standard."

[4]We review findings of fact and credibility determinations made in removal proceedings under the substantial evidence test.  Alhuay v. U.S. Att'y Gen., 661 F.3d 534, 546 n.12 (11th Cir. 2011).  "The substantial evidence test requires reversal of factual findings only if the evidence presented compels a contrary conclusion."  Id. (quotation marks omitted).  Where, as here, the BIA affirms and explicitly agrees with the IJ's findings, we review the decisions of both the IJ and the BIA as to those issues.  Ayala v. U.S. Att'y Gen., 605 F.3d 941, 948 (11th Cir. 2010).

19

adjustment application that he had never been arrested and convicted, and that Bhai repeated that false assertion to Officer Lee during the 2006 adjustment interview. Although Bhai testified that he did not intend to deceive and merely misunderstood the question, the IJ found Bhai's testimony incredible.

Furthermore, substantial evidence supports the IJ's determination that Officer Lee was credible, but Bhai was not. The IJ's reasons for discrediting Bhai included Bhai's evasive demeanor, the implausibility of his account, and the lack of corroborating evidence in support of his testimony. The record reflects that, although Bhai testified that he misunderstood the words "arrest" and "conviction," he refused to give clear answers as to his understanding of those words. Bhai also failed to account for his ability to respond accurately to other questions of equal complexity during the 2006 interview, on his adjustment application, or on his 1993 asylum application, when his language skills presumably would have been even more limited. Bhai's claim that he misunderstood the words "arrest" and "conviction" is particularly suspect given that he was actually arrested and convicted.

Bhai placed much of the blame on his prior attorney. For instance, Bhai said that his prior attorney completed his adjustment application without asking Bhai about his criminal history and refused Bhai's request for a translator at the

20

adjustment interview. However, Bhai did not submit any corroborating evidence from his prior attorney and did not file a bar complaint against his attorney.

There is no merit to Bhai's contention that his retraction during the interview is evidence of his lack of intent to deceive. First, according to Officer Lee's credited testimony, Officer Lee was unaware of Bhai's conviction during the interview. Officer Lee explained that he would have noted on the adjustment paperwork if Bhai had admitted to the arrest or conviction during the interview and would have had Bhai initial the notation. Officer Lee's adjustment paperwork did not contain such a notation. Thus, under Officer Lee's credited version of events, corroborated by the adjustment paperwork, Bhai did not make a retraction during the interview. In any event, even if Bhai's claimed retraction were credited, it does not compel reversal because Bhai admitted he only retracted his false answer after Officer Lee showed him the conviction record.

As the BIA noted, the IJ could have conceivably weighed the evidence differently, and accepted Bhai's version of events. However, that possibility does not compel a reversal. See Ruiz v. U.S. Att'y Gen., 440 F.3d 1247, 1254-55 (11th Cir. 2006) (explaining that the mere fact that the record may support a contrary conclusion is not enough to justify reversal of the agency's findings). In sum, substantial evidence supports the finding that Bhai willfully misrepresented his

21

criminal history in an attempt to procure a benefit under the INA, i.e., adjustment of his status to lawful permanent residence.

## B.    Bhai's Asylum and Withholding of Removal Claims

To establish eligibility for asylum, an applicant must show, with credible, direct, and specific evidence, either past persecution or a well-founded fear of future persecution on account of race, religion, nationality, membership in a particular social group, or political opinion.  INA §§ 208(b)(1), 8 U.S.C. § 1158(b)(1), INA § 101(a)(42), 8 U.S.C. § 1101(a)(42); Forgue v. U.S. Att'y Gen., 401 F.3d 1282, 1286-87 (11th Cir. 2005); 8 C.F.R. § 208.13(a), (b). Similarly, to be eligible for withholding of removal under the INA, an applicant must show that it is more likely than not that he has been or will be persecuted on account of one of the five protected grounds.  INA § 241(b)(3), 8 U.S.C. § 1231(b)(3); Sepulveda v. U.S. Att'y Gen., 401 F.3d 1226, 1232 (11th Cir. 2005). Because this standard is more stringent than the standard for asylum, an alien who fails to establish asylum eligibility generally cannot satisfy the higher burden for withholding of removal.  Id. at 1232-33.[5]

If the IJ finds an asylum applicant not credible, the IJ must make an explicit adverse credibility finding and offer "specific, cogent reasons" for the finding.

---

[5]We review the factual determinations that an alien is ineligible for asylum and withholding of removal under the "highly deferential" substantial evidence test.  Al Najjar v. Ashcroft, 257 F.3d 1262, 1283-84 (11th Cir. 2001).

Forgue, 401 F.3d at 1287 (quotation marks omitted).  "Indications of reliable testimony include consistency on direct examination, consistency with the written application, and the absence of embellishments."  Ruiz, 440 F.3d at 1255. "Once an adverse credibility finding is made, the burden is on the applicant alien to show that the IJ's credibility determination was not supported by 'specific, cogent reasons' or was not based on substantial evidence."  Forgue, 401 F.3d at 1287.[6]

Although uncorroborated but credible testimony may be sufficient to demonstrate asylum eligibility, "[t]he weaker an applicant's testimony, . . . the greater the need for corroborative evidence."  Yang v. U.S. Att'y Gen., 418 F.3d 1198, 1201 (11th Cir. 2005).  "Conversely, an adverse credibility determination alone may be sufficient to support the denial" of an applicant's claim, especially if the applicant fails to produce corroborating evidence.  See Forgue, 401 F.3d at 1287.

---

[6]The BIA affirmed the IJ's adverse credibility determination and elaborated upon some of the IJ's reasoning.  Thus, we review the IJ's credibility finding as supplemented by the BIA.  See Savoury v. U.S. Att'y Gen., 449 F.3d 1307, 1312 (11th Cir. 2006).  We review credibility findings under the substantial evidence test, and "like any fact finding, [they] may not be overturned unless the record compels it."  Forgue, 401 F.3d at 1286-87 (quotation marks omitted). We note that the REAL ID Act of 2005 changed the INA's standards for evaluating the credibility of an applicant for asylum or withholding of credibility.  See Pub. L. No. 109-13, § 101(a)(3), (c), (d)(2), 119 Stat. 231, 303 (2005) (codified at 8 U.S.C. §§ 1158(b)(1)(B)(iii), 1231(b)(3)(C), 1229a(c)(4)(C)).  Because Bhai's application was filed before May 11, 2005, however, the new standards do not apply to his asylum and withholding of removal claims.  See Shkambi v. U.S. Att'y Gen., 584 F.3d 1041, 1049 n.7 (11th Cir. 2009); Pub. L. No. 109-13, § 101(h)(2), 119 Stat. 231, 305.

Here, the adverse credibility determination is supported by specific, cogent reasons, including: (1) the inconsistencies between Bhai's testimony and other items of evidence; (2) the implausibility of his claim concerning his uncle's death; and (3) his evasive demeanor during the hearing. The record supports these bases.

For example, in his 1993 asylum application, Bhai attributed his ten-day detention to punishment for fighting with the police chief's son, and he stated that the police put him in jail, rather than in a house. However, in subsequent immigration applications and interviews, Bhai changed his account substantially, describing the reason for his detention as his political affiliation, the men who detained him as PPP members, and the location as a dark house. Meanwhile, Bhai's later accounts were inconsistent with his mother's affidavit, in which she identified the men as police officers. Bhai was unable to clearly reconcile these inconsistencies before the IJ, and continued to change his answer even then, responding at one point, for example, that perhaps the men were police.[7]

Substantial evidence also supports the IJ's finding that certain aspects of Bhai's claim concerning his uncle's death were implausible. Bhai testified that PPP members killed his uncle in 1997 because they were looking for Bhai. Yet,

---

[7]After the REAL ID Act, the INA permits an adverse credibility determination based on inconsistencies that do not go "to the heart of the applicant's claim." See INA § 208(b)(1)(B)(iii), 8 U.S.C. § 1158(b)(1)(B)(iii). We need not resolve whether adverse credibility determinations in pre-REAL ID Act cases must go to the heart of the claim, however, because, as the BIA pointed out, Bhai's inconsistencies regarding the reasons for his detention and the identity of his captors go to the heart of Bhai's claims.

24

Bhai conceded that neither he nor his family had any issues with the PPP during the period of time after his release from detention in 1990 until he left Pakistan for the United States in 1991. Further, his uncle's death was the first alleged violent act against Bhai's family by the PPP after Bhai left, though six years had passed without incident. And, the BIA reasonably noted that it was implausible that Bhai's father would expose himself to possible harm by taking over Bhai's uncle's shop, or that, after having done so, the men looking for Bhai would not similarly harm his father.

We defer to the IJ's finding as to Bhai's demeanor. Because an IJ "is [uniquely] positioned to make determinations about demeanor—by observing the alien and assessing his or her tone and appearance"—we give "great deference to an IJ's assessment of 'demeanor.'" Todorovic v. U.S. Att'y Gen., 621 F.3d 1318, 1324-25 (11th Cir. 2010). Bhai has not offered any reason why we should withhold such deference in this case.

Furthermore, apart from Bhai's discredited testimony, none of the other evidence compels a conclusion that Bhai suffered past persecution or has a well-founded fear of future persecution. For example, Bhai's only evidence that he was an active MQM member in Pakistan is his own testimony. Beyond his own testimony, the only evidence concerning Bhai's ten-day detention, the basis of his

25

past persecution claim, was his mother's affidavit, which partially contradicted his own account.

Similarly, the only evidence corroborating Bhai's claims concerning his Uncle's death were the affidavits of his mother and cousin, but these affidavits were not wholly consistent with each other or with other evidence in the record. Bhai's cousin stated that Bhai's uncle was shot and killed in his store by the "strong political group" that harassed Bhai. Notably, the death certificate for Bhai's uncle indicates that his death was caused by "cardiac respiratory arrest due to fire calm injury [sic]" and that Bhai's uncle died in the hospital, not in his shop, as claimed by Bhai's cousin, or on the road as claimed by Bhai's mother. Even to the extent these affidavits support Bhai's claims, they are not substantial enough to compel reversal. See Yang, 418 F.3d at 1201 (explaining that when the applicant's testimony is weak, the need for corroborative evidence is great).

Further, although Bhai's mother stated that PPP members continue to look for Bhai and have come to her house and harassed her and her family, Bhai conceded at the hearing that no one in his family has been harmed in the thirteen years since his uncle's death in 1997. As the BIA pointed out, the fact that Bhai's family has remained unharmed in Karachi, Pakistan since 1997 undermines his mother's assertion of potential future harm. See Ruiz, 440 F.3d at 1259

26

(concluding that an asylum applicant failed to show future persecution in part because his family remained in the same region of Colombia without incident).

Bhai also submitted an expert report on Pakistan by Dr. Shaul Gabbay.  Dr. Gabbay opined that Bhai faces danger if returned to Pakistan given, in relevant part, the past physical abuse Bhai suffered based on his political beliefs.  Dr. Gabbay's opinion, however, rested on the same statements concerning Bhai's MQM membership and his detention by the PPP that the IJ found not credible.

Dr. Gabbay further opined that Bhai primarily risks danger from the Taliban and religious extremists with anti-western sentiments who would view him as a U.S. spy, a claim Bhai has never raised.  Dr. Gabbay also stated that there has been political violence between two competing factions of the MQM—the MQM-H and the MQM-A.  However, Bhai has never claimed to be a member of either of these factions or to fear harm from either of them.  Dr. Gabbay's report did not mention any political violence between the PPP and the MQM, which is the basis for Bhai's particular persecution claims.  Thus, Dr. Gabbay's report is not persuasive in assessing Bhai's future persecution claim.

The record contains other background information about political violence and instability in Pakistan, including: (1) the U.S. State Department's 2008 Human Rights Report on Pakistan, which reported extrajudicial and politically motivated

27

killings, torture, and disappearances, sometimes carried out by the police;[8] (2) news reports of killings of MQM members by unknown perpetrators; and (3) reports about violence between numerous political and sectarian groups in Pakistan.  However, in light of the adverse credibility determination, none of this evidence compels the conclusion that Bhai himself would be "singled out" for harm because of his political opinion if he returned to Pakistan.  See Sepulveda, 401 F.3d at 1231 (stating that an asylum applicant must present evidence showing "a good reason to fear that he or she will be singled out for persecution").

Accordingly, substantial evidence supports the IJ's finding that Bhai failed to establish asylum eligibility.  Because Bhai could not show eligibility for asylum, he necessarily failed to demonstrate that he was eligible for withholding of removal.  See id. at 1232-33.

### III. CONCLUSION

For these reasons, we conclude the IJ properly found Bhai inadmissible due to his willful misrepresentations in his adjustment application and interview and, thus, ineligible for adjustment of status.  We also conclude the IJ properly found that Bhai failed to carry his burden to show he was eligible for asylum or withholding of removal.  We deny Bhai's petition with respect to these claims.

---

[8]The 2008 Country Report stated that that the MQM had accused Jamaat-e-Islami of killing a number of MQM members during "ongoing violence between the two parties over political control" of Karachi, but there was no specific mention of violence between the MQM and the PPP.

We dismiss the petition as to Bhai's claim for CAT relief for lack of jurisdiction because he failed to exhaust this issue in his appeal to the BIA.  See INA § 242(d)(1), 8 U.S.C. § 1252(d)(1); Amaya-Artunduaga v. U.S. Att'y Gen., 463 F.3d 1247, 1250 (11th Cir. 2006).

**PETITION DISMISSED IN PART AND DENIED IN PART.**